# WALLING *v.* MICHIGAN.

## ERROR TO THE SUPREME COURT OF THE STATE OF MICHIGAN.

Argued December 3, 1884.—Decided January 18, 1886.

A tax imposed by a statute of a State upon an occupation, which necessarily discriminates against the introduction and sale of the products of another State or against the citizens of another State, is repugnant to the Constitution of the United States.

The police power of a State to regulate the sale of intoxicating liquors and preserve the public health and morals does not warrant the enactment of laws infringing positive provisions of the Constitution of the United States.

A State statute which imposes a tax upon persons who, not residing or having their principal place of business within the State, engage there in the business of selling or soliciting the sale of intoxicating liquors to be shipped into the State from places without it, but does not impose a similar tax upon persons selling or soliciting the sale of intoxicating liquors manufactured in the State, is a regulation in restraint of commerce repugnant to the Constitution of the United States: and the defect is not cured by a subsequent enactment, imposing a greater tax upon all persons within the State engaged in the business of manufacturing or selling such liquors therein.

In 1875 the legislature of the State of Michigan passed an act relating to the sale of liquors in that State to be shipped into the State by persons not residing therein, known as Act No. 226 of the Session Laws of 1875, of which the following is a copy :

" AN ACT to impose a tax on the business of selling spirituous and intoxicating, malt, brewed, and fermented liquors in the State of Michigan to be shipped from without this state.

" SECTION 1. *The People of the State of Michigan enact:* That every person who shall come into, or being in this state, shall engage in the business of selling spirituous and intoxicating, malt, brewed, or fermented liquors to citizens or residents of this state, at wholesale, or of soliciting or taking orders from citizens or residents of this state for any such liquors, to be shipped into this state, or furnished, or supplied at wholesale to any person within this state, not having his, their, or its

principal place of business within this state, shall, on or before the fourth Friday of June in each year, pay a tax of three hundred dollars if engaged in selling, or soliciting, or taking orders for the sale of such spirituous and intoxicating liquors, and one hundred dollars for malt, brewed, or fermented liquors. Such tax shall be paid to the Auditor General and be by him paid into the state treasury, to the credit of the general fund.

" SEC. 2. Upon the payment of such tax, the Auditor General shall issue to such person a receipt therefor, and in case of loss thereof, a duplicate, when required by the person to whom the original receipt was issued. Every person making sales, or soliciting, or taking orders, as in the first section of this act provided, shall exhibit such receipt to every person to whom he makes sale, or from whom he takes or solicits orders for such liquors, and shall exhibit such receipt to any supervisor, justice of the peace, sheriff, under sheriff or deputy sheriff, city or village marshal, chief of police, policeman, or constable, when required so to do, during business hours.

" SEC. 3. Any person liable to pay any tax under this act, who shall sell any liquors, or solicit, or take orders for liquors to be shipped from without this state to any person within this state, furnished or supplied by a person, copartnership, association, or corporation, not resident in, or having his, their, or its principal place of business within this state, without the tax herein provided for having been paid, and having in his possession and exhibiting the receipt therefor, or a duplicate thereof ; and any person residing or being in this state who shall purchase liquors from a person liable to pay a tax under this act, who has not paid such tax, or shall give an order for liquors to such person liable to pay a tax under this act, which order is to be filled, and such liquors are to be shipped from without this state to a person within this state, furnished or supplied by a person, copartnership, association, or corporation, not resident in or having his, their, or its principal place of business within this state, shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be punished by a fine of not less than twenty-five dollars, nor more than one hundred dollars; and in default of payment thereof, shall be imprisoned not less than

ten nor more than ninety days, or both such fine and imprisonment, in the discretion of the court.

"SEC. 4. Selling at wholesale shall be deemed to mean and include all sales of such spirituous and intoxicating, malt, brewed or fermented liquors in quantities of five gallons or over, or one dozen quart bottles or more, or soliciting orders therefor at any one time of any person."

In addition to the foregoing act there was another independent law in operation in Michigan in 1883, being an act passed May 31, 1879, entitled "An act to provide for the taxation of the business of manufacturing and selling spirituous and intoxicating, malt, brewed, or fermented liquors," and to repeal a previous act for the same purpose, passed in 1875. Sess. Laws of 1879, 293. The act of 1879 was amended by an act passed May 19th, 1881. Howell's Annotated Statutes, § 1281. As amended it reads as follows:

"§ 1281. Sec. 1. In all townships, cities, and villages of this state there shall be paid annually the following tax upon the business of manufacturing, selling, or keeping for sale, by all persons whose business, in whole or in part, consists in selling or keeping for sale or manufacturing distilled or malt liquors, or mixed liquors, as follows: Upon the business of selling or offering for sale spirituous or intoxicating liquors, or mixed liquors, by retail, or any mixture or compound, excepting proprietary patent medicines, which in whole or in part consists of spirituous or intoxicating liquors, the sum of three hundred dollars per annum; upon the business of selling or offering for sale, by retail, any malt, brewed, or fermented liquors, two hundred dollars per annum; upon the business of selling brewed or malt liquors at wholesale, or at wholesale and retail, two hundred dollars per annum; upon the business of selling spirituous or intoxicating liquors at wholesale, or at wholesale and retail, five hundred dollars per annum; upon the business of manufacturing brewed or malt liquors for sale, if the quantity manufactured be less than fifteen hundred barrels, sixty-five dollars per annum, and twenty-five dollars upon each additional thousand barrels, or part thereof; upon the business of manufacturing for sale spirituous or intoxicating

liquors, five hundred dollars per annum.   No person paying a tax on spirituous or intoxicating liquors, under this act, shall be liable to pay any tax on the sale of malt, brewed, or fer-mented liquors.   No person paying a manufacturer's tax on brewed or malt liquors, under this act, shall be liable to pay a wholesale dealer's tax on the same."   Howell's Annotated Stat-utes of Mich., 378.   .

It was not contended that this act altered or affected the act of 1875, on which the prosecution against Walling was based, ex-cept so far as it might have the effect of removing the discrimi-nation against the citizens or products of other States, which would be produced by the act of 1875 standing alone.   The counsel for the State contended that the effect of the act of 1881 was, not only to annul any such discrimination, but to create a discrimination against the citizens and products of Michigan in favor of the citizens and products of other States. Whether this was so is a question discussed in the opinion.

In June, 1883, Walling, the plaintiff in error, was prosecuted under the act of 1875, No. 226, being charged in one count of the complaint with selling at wholesale without license, and in another count with soliciting and taking orders for the sale, without license, and at wholesale, of spirituous and intoxicating liquors, to be shipped from out of the State, to wit, from Chi-cago, in the State of Illinois, into the State of Michigan, and furnished and supplied to citizens and residents of said State by Cavanaugh & Co., a firm doing business in Chicago, not resi-dents of Michigan and not having its principal place of business therein.   The prosecution was instituted in the Police Court of Grand Rapids, and Walling was convicted and sentenced to pay a fine, and to be imprisoned in default of payment.   He appealed to the county Circuit Court, in which the case was tried by a jury, who, under the charge of the court, rendered a verdict of guilty.   Exceptions being taken, the case was carried to the Supreme Court of Michigan, which adjudged that there was no error in the proceedings, and directed judgment to be entered against the respondent.   The decision of the Supreme Court was brought here by writ of error.

By the bill of exceptions it appeared that one Chapin Pease was

called as a witness for the prosecution, and was asked what business the respondent (Walling) was engaged in. The respondent objected to the giving of testimony under the complaint, on the ground that the act of 1875 was repugnant to the Constitution of the United States and therefore void; that it was in conflict with paragraph 3 of Section 8, Article 1, giving Congress power to regulate commerce, &c.; paragraph 2 of Section 10, Article 1, prohibiting *ex post facto* laws and laws impairing the obligation of contracts; and paragraph 1 of Section 2, Article 4, which declares that "the citizens of each state shall be entitled to all the privileges and immunities of citizens in the several states." The defendant also objected to the admission of any testimony, because the law referred to is in conflict with the State constitution. All the objections were overruled, and exceptions were duly taken. The witness then testified that Walling, on June 1, 1883, and before and since that time, was engaged as a traveling salesman for the firm of Cavanaugh & Co., of Chicago, Illinois, (shown to be wholesale liquor merchants residing in Chicago,) and that his business was that of selling liquor at wholesale for that firm; that the place of business of Cavanaugh & Co. was in Chicago, and that the firm had no place of business in Michigan; that on the first of June, 1883, Walling solicited the witness's order for a barrel of whiskey to be shipped to him by Cavanaugh & Co. from the city of Chicago, and from without the State of Michigan; that witness gave his order for a barrel of whiskey, and the same was shipped to him by said firm from Chicago, and he paid for the same, and that Walling exhibited to witness no receipt from the Auditor-General of Michigan to show that he had paid the tax required by the statute. It was also shown that Walling had never paid any such tax nor received any such receipt.

The evidence being closed, the respondent, on the ground of the alleged conflict of the law with the Constitution of the United States, made various distinct applications to the court: first, to strike out the evidence and grant him a discharge; secondly, to charge the jury that the statute of 1875 was in conflict with the Constitution of the United States and therefore void, and, therefore, that their verdict should be not guilty; thirdly to

charge that, under the facts disclosed, the jury should find the respondent not guilty. These applications were severally refused and exceptions taken. The court then charged the jury that the act in question must be regarded as within the power of the legislature, and as being a valid statute; and that if they should find that the evidence sustained the allegations of the complaint they must find the respondent guilty; to which charge the respondent excepted.

*Mr. O. W. Powers* for plaintiff in error.

*Mr. J. J. Van Riper,* Attorney-General of the State of Michigan, for defendant in error.

I. The statute in question does not conflict with the provision in the Constitution which grants to Congress the power to regulate commerce among the several States. Art. I., sec. 8, Par. 3. It is well settled that a statute taxing or prohibiting the sale of intoxicating liquors is not a regulation of commerce, but an exercise of police power. *Commonwealth* v. *Kimball,* 24 Pick. 359, 363; *Bartemeyer* v. *Iowa,* 18 Wall. 129; *License Cases,* 5 How. 504; *Gibbons* v. *Ogden,* 9 Wheat. 1, 205; *Passenger Cases,* 5 How. 283. In the *License Cases* almost every phase of the liquor question, and the power of States to legislate on it was fully discussed, and their absolute control over it was settled. In considering the questions raised in this case it is important to remark that the tax is not to be levied solely upon non-residents, but upon every person coming into or being in the State, and engaging in the business. There is no unjust discrimination against citizens of other States. It is true that in order to be liable under the statute, the person soliciting orders or selling must do so for persons or corporations non-resident and not having their principal place of business in the State. But the tax is not upon the non-resident party who ships the goods, but upon the person soliciting whether resident or non-resident, and is therefore not a tax upon commerce, within the decisions cited above. It is a tax upon *occupations,* not upon *commerce.* The essential right of the State to levy and collect such a tax is recognized in the

following cases: *McCullough* v. *Maryland*, 4 Wheat. 316, 428; *Brown* v. *Maryland*, 12 Wheat. 419, 444; *License Cases*, 5 How. 504, 593; *Nathan* v. *Louisiana*, 8 How. 73, 80; *Hinson* v. *Lott*, 8 Wall. 148; *Machine Co.* v. *Gage*, 100 U. S. 676.

It may be claimed that in this case it is a tax upon the business and not upon the individual, and is therefore an attempt to regulate commerce among the several States; and that *Brown* v. *Maryland*, above cited settles the point that taxation upon the individual is a tax upon the business; but upon examination of this case it will be found that the facts are not similar. The State of Maryland required every *importer* of goods to pay a license fee of fifty dollars before he should be permitted to sell a package of *imported* goods. This was held to be a tax upon importation. It cannot be maintained that a tax like that imposed by Michigan upon persons soliciting orders for liquors to be shipped into the State by non-residents, stands upon the same footing as the tax declared unconstitutional in *Brown* v. *Maryland*. We tax neither *importer* nor *imports*. It is well settled that the terms "imports" and "exports" do not refer to goods brought from one State into another. *Woodruff* v. *Parham*, 8 Wall. 123; *License Cases*, above cited. The latter cases even settle that a State may require a license to sell spirits of foreign manufacture, and that a State statute imposing a tax for such license is not a regulation of commerce, but an exercise of the reserved police power. See the remarks of McLean, J., in the *Passenger Cases* on page 283, 7 How.; and of Marshal, C. J., in *Gibbons* v. *Ogden*, on page 208, 9 Wheat.

In *Pierce* v. *New Hampshire*, 5 How. 593, the third of the license cases, the power of a State to tax goods brought from, and manufactured in another State, was fully discussed and settled. The defendants in that case imported a barrel of gin from the State of Massachusetts to the State of New Hampshire, and there sold it in the same barrel, and claimed that they could not be required to pay a license tax upon such sale. The court, however, sustained the law of New Hampshire, and held that the statute imposing the tax was not in conflict with the constitution, distinguishing the case from *Brown* v. *Mary-*

*land.* In the latter case there was a discrimination against the persons taxed. In the present case the discrimination is in favor of the non-resident, and against the resident citizen engaged in the business of selling liquors at wholesale, within the State. In every case in which there has been no unjust discrimination between the tax or license imposed upon goods within the State imposing it, and goods brought into it from other States, the tax has been upheld as constitutional. *Woodruff* v. *Parham,* 8 Wall. 123; *Webber* v. *Virginia,* 103 U. S. 344; *Ward* v. *Maryland,* 12 Wall. 418; *People* v. *Waring,* 3 Keyes, 374; *Gibbons* v. *Ogden,* 9 Wheat. 1, 199; *Nathan* v. *Louisiana,* 8 How. 73, 82; *Hinson* v. *Lott,* 8 Wall. 148, 151; *Connor* v. *Elliott,* 18 How. 591, 593; *State* v. *North,* 27 Missouri, 464, 467; *Paul* v. *Virginia,* 8 Wall. 168, 177; *G ty* v. *Baltimore,* 100 U. S. 434; *Machine Co.* v. *Gage,* 100 U. S. 676.

II. The Michigan statute does not conflict with that provision of the Constitution which prohibits States, without the consent of Congress, from laying imposts or duties on imports or exports. Art. I., sec. 10, par. 2. It has been held by this court, that the terms " imposts " and " duties," refer solely to the duties upon foreign and imported articles, and do not refer to taxes in the nature of license taxes, or special taxes which grow out of the internal police regulations of the State; and that the terms " imports " and " exports " do not refer to goods brought from one State into another, but only to articles imported from, or exported to, foreign countries. *Brown* v. *Maryland ; Woodruff* v. *Parham ; License Cases ;* all cited above.

III. Nor does it conflict with the provision of the Constitution that " the citizens of each State shall be entitled to all privileges and immunities of citizens in the several States." Art. IV., sec. 2, par. 1. It will be seen by reference to the act in question, that the person selling, or soliciting the sale of intoxicating liquors at wholesale, to be shipped into this State by non-resident dealers, is required to pay a tax of $300 ; and for selling malt, brewed, or fermented liquors, the sum of $100, while the resident wholesale dealer is, by the above section, required to pay a tax of $500 ; and for malt, brewed, or fer-

mented liquors, a tax of $200, from which it will be found that the non-resident may sell intoxicating liquors at wholesale, by paying only three-fifths of what is required of the resident dealer, and may sell malt and fermented liquors by paying one-half of that required of the resident dealer. This discrimination is all in favor of the non-resident, and so long as the non-resident does not pay a greater sum than the resident, there is no unjust discrimination against him. He has no cause for complaint, and is not deprived of the privileges and immunities of citizens of this State. *Guy* v. *Baltimore; Ward* v. *Maryland*; both cited above.

MR. JUSTICE BRADLEY delivered the opinion of the court. After stating the facts in the language reported above, he continued:

The single question, now before us for consideration is, whether the statute of 1875 is repugnant to the Constitution of the United States. Taken by itself, and without having reference to the act of 1881, it is very difficult to find a plausible reason for holding that it is not repugnant to the Constitution. It certainly does impose a tax or duty on persons who, not having their principal place of business within the State, engage in the business of selling, or of soliciting the sale of, certain described liquors, to be shipped into the State. If this is not a discriminating tax levelled against persons for selling goods brought into the State from other States or countries, it is difficult to conceive of a tax that would be discriminating. It is clearly within the decision of *Welton* v. *Missouri*, 91 U. S. 275, where we held a law of the State of Missouri to be void which laid a peddler's license tax upon persons going from place to place to sell patent and other medicines, goods, wares, or merchandise, not the growth, product, or manufacture of that State, and which did not lay a like tax upon the sale of similar articles, the growth, product, or manufacture of Missouri. The same principle is announced in *Hinson* v. *Lott*, 8 Wall. 148; *Ward* v. *Maryland*, 12 Wall. 418; *Guy* v. *Baltimore*, 100 U. S. 434, 438; *County of Mobile* v. *Kimball*, 102 U. S. 691, 697; *Webber* v. *Virginia*, 103 U. S. 344.

A discriminating tax imposed by a State operating to the disadvantage of the products of other States when introduced into the first mentioned State, is, in effect, a regulation in restraint of commerce among the States, and as such is a usurpation of the power conferred by the Constitution upon the Congress of the United States.

We have so often held· that the power given to Congress to regulate commerce with foreign nations, among the several States and with the Indian tribes, is exclusive in all matters which require, or only admit of, general and uniform rules, and especially as regards any impediment or restriction upon such commerce,. that we deem it necessary merely to refer to our· previous decisions on the subject, the most important of which are collected in *Brown* v. *Houston,* 114 U. S. 622, 631, and need not be cited here. We have also repeatedly held that so long as Congress does not pass any law to regulate commerce among the several States, it thereby indicates its will that such commerce shall be free and untrammelled; and that any regulation of the subject by the States, except in matters of local concern only, is repugnant to such freedom. *Welton* v. *Missouri,* 91 U. S. 275, 282; *County of Mobile* v. *Kimball,* 102 U. S. 691, 697; *Brown* v. *Houston,* 114 U. S. 622, 631. In Mr. Justice Johnson's concurring opinion · in the case of . *Gibbons* v. *Ogden,* 9 Wheaton, 1, 222, his whole argument (which is a very able one) is based on the idea that the power to regulate commerce with foreign nations and among the several States was by the Constitution surrendered by the States to the United States, and therefore, must necessarily be exclusive, and that where Congress has failed to restrict such commerce, it must necessarily be free. He says: " Of all the endless variety of branches of foreign commerce, now carried on to every quarter of the world, I know of no one that is permitted by act of Congress, any otherwise than by not being forbidden." " The grant to Livingston and Fulton interferes with the freedom of intercourse among the states." The same sentiment was expressed by Mr. Justice Grier in his opinion in the *Passenger Cases,* 7 How. 283, 462, where he says: " And to what weight is that argument entitled, which assumes, that because

it is the policy of Congress to leave this intercourse free, therefore it has not been regulated, and each state may put as many restrictions upon it as she pleases?" And one of the four propositions with which the opinion concludes is as follows, to wit: "4th. That Congress has regulated commerce and intercourse with foreign nations and between the several states, by willing that it shall be free, and it is, therefore, not left to the discretion of each state in the Union either to refuse a right of passage to persons or property through her territory, or to exact a duty for permission to exercise it."

The argument of these eminent judges, that where Congress has exclusive power to regulate commerce, its non-action is equivalent to a declaration that commerce shall be free, (and we quote their opinions for no other purpose,) seems to be irrefragable. Of course the broad conclusions to which they arrive, that the power is exclusive in all cases, are subject to the modifications established by subsequent decisions, such as *Cooley* v. *The Board of Wardens*, 12 How. 299, and others.

The law is well summarized in the opinion of this court delivered by Mr. Justice Field in *County of Mobile* v. *Kimball*, 102 U. S. 691, 697, where it is said : " The subjects indeed upon which Congress can act under this power are of infinite variety, requiring for their successful management different plans or modes of treatment. Some of them are national in their character, and admit and require uniformity of regulation, affecting alike all the states; others are local, or are mere aids to commerce, and can only be properly regulated by provisions adapted to their special circumstances and localities. Of the former class may be mentioned all that portion of commerce with foreign countries or between the states which consists in the transportation, purchase, sale, and exchange of commodities. Here there can of necessity be only one system or plan of regulation, and that Congress alone can prescribe. Its nonaction in such cases with respect to any particular commodity or mode of transportation is a declaration of its purpose that the commerce in that commodity or by that means of transportation shall be free. There would otherwise be no security against conflicting regulations of different states, each discrim-

inating in favor of its own products and citizens, and against the products and citizens of other states. And it is a matter of public history that the object of vesting in Congress the power to regulate commerce with foreign nations and among the states was to insure uniformity of regulation against conflicting and discriminating state legislation."

Many State decisions might also be cited in which the same doctrine is announced. Thus in the case of *Higgins* v. *Three Hundred Casks of Lime*, 130 Mass. 1, 3, it is said: "The result of all the decisions is, that the several states have no authority to prescribe different regulations in relation to the commerce in certain articles, dependent upon the state from which they are brought. This rule in no manner controls or limits the power of a state to enact appropriate health or inspection laws; for such laws are necessarily uniform, and are not dependent upon place." In *State* v. *Furbush*, 72 Maine, 493, 495, construing a statute of Maine, the Supreme Court of that State says: "The act is unconstitutional. It allows goods manufactured in this state to be peddled free, and exacts a license fee from those who peddle similar goods which are manufactured out of the state. Such a discrimination in favor of goods manufactured in this state, and against goods manufactured in other states, violates the federal constitution." In *State* v. *North & Scott*, 27 Missouri, 464, 471, 476, where an act of Missouri imposed a tax upon merchants for all goods purchased by them, except such as might be the growth, produce, or manufacture of that State, and manufactured articles the growth or produce of other States, it was held by the Supreme Court of that State that the law was unconstitutional and void. The court say: "From the foregoing statement of the law and facts of this case it will be seen that it presents the question of the power of the states, in the exercise of the right of taxation, to discriminate between products of this state and those manufactured in our sister states." And after an examination of the causes which led to the adoption of the Federal Constitution, one of the principal of which was the necessity for the regulation of commerce and the laying of imposts and duties by a single government, the

court say: "But, whatever may be the motive for the tax, whether revenue, restriction, retaliation, or protection of domestic manufactures, it is equally a regulation of commerce, and in effect an exercise of the power of laying duties on imports, and its exercise by the states is entirely at war with the spirit of the constitution, and would render vain and nugatory the power granted to Congress in relation to those subjects. Can any power more destructive to the union and harmony of the States be exercised than that of imposing discriminating taxes or duties on imports from other states? Whatever may be the motive for such taxes, they cannot fail to beget irritation and to lead to retaliation; and it is not difficult to foresee that an indulgence in such a course of legislation must inflame and produce a state of feeling that would seek its gratification in any measures regardless of the consequences." See also *Norris* v. *Boston*, 4 Met. (Mass.) 282, 293; *S. C.* in error among the *Passenger Cases*, 7 How. 283; *Oliver* v. *Washington Mills*, 11 Allen, 268; *Pierce* v. *The State*, 13 N. H. 536, 582; *McGuire* v. *Parker*, 32 La. Ann. 832; *Wiley* v. *Parmer*, 14 Ala. 627; *Scott* v. *Watkins*, 22 Ark. 556, 564; *State* v. *McGinnis*, 37 Ark. 362; *State* v. *Browning*, 62 Missouri, 591; *Daniel* v. *Richmond*, 78 Ky. 542.

In view of these authorities, especially the decisions of this court on the subject, we have no hesitation in saying that the act of 1875, under which the prosecution against Walling was instituted, if it stood alone, without any concurrent law of Michigan imposing a like tax to that which it imposes upon those engaged in selling or soliciting the sale of liquors the produce of that State, would be repugnant to that clause of the Constitution of the United States which confers upon Congress the power to regulate commerce among the several States.

The question then arises whether the act of 1879, as amended by that of 1881, has removed the objection to the validity of the act of 1875. We have carefully examined that act, and have come to the conclusion that it has not done so. We will briefly state our reasons for this conclusion.

The council for the State suppose that the act of 1881 imposes a heavier tax on Michigan dealers in liquors of domestic

origin than that imposed by the act of 1875 on those who deal in liquors coming from outside of the State, and, hence, that if there is any discrimination it is against the domestic and in favor of the foreign dealer or manufactured article. We do not think that this position is correct. Let us compare the two acts.

Of course the act of 1875 does not assume to tax non-resident persons or firms for doing business in another State. They are subject to taxation in the States where they are located. It is the business of selling for such non-resident parties, or soliciting orders for them for sale in Michigan of liquors imported into the State, that is the object of taxation under the law; and any person engaged in those employments, or either of them, is subject to the tax of three hundred dollars per annum. Now, is such a tax, or any tax imposed upon those who are engaged in the like employment for persons or firms located in Michigan, selling or soliciting orders for the sale of liquors manufactured in that State? Clearly not. The tax imposed by the act of 1881 is a tax on the manufacturer or dealer. He is taxed in the city, township, or village in which his distillery or principal place of business is situated. He is subject to a single tax of five hundred dollars per annum. No tax is imposed on his clerks, his agents, or his drummers, who sell or solicit orders for him. They are merely his servants, and are not included in the law. It is he, and not they, whose business is the manufacture or sale of liquors, and who is subject to taxation under the law. Whereas the drummers and agents of the foreign manufacturer or dealer, located in Illinois or elsewhere, are all and each of them subject to the tax of three hundred dollars per annum. In the one case it is a single tax on the principal; in the other it is a tax, not on the principal, for he cannot be taxed in Michigan, but on each and all of his servants and agents selling or soliciting orders for him. The tax imposed by the act of 1875 is not imposed on the same class of persons as is the tax imposed by the act of 1881. That this must give an immense advantage to the product manufactured in Michigan, and to the manufacturers and dealers of that State, is perfectly manifest.

It is suggested by the learned judge who delivered the

opinion of the Supreme Court of Michigan in this case, that the tax imposed by the act of 1875 is an exercise by the legislature of Michigan of the police power of the State for the discouragement of the use of intoxicating liquors, and the preservation of the health and morals of the people. This would be a perfect justification of the act if it did not discriminate against the citizens and products of other States in a matter of commerce between the States, and thus usurp one of the prerogatives of the national legislature. The police power cannot be set up to control the inhibitions of the Federal Constitution, or the powers of the United States Government created thereby. *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S. 650.

Another suggestion in the opinion referred to is, that, although the tax imposed by the act of 1875 may be a regulation of the introduction of spirituous liquors from another State into the State of Michigan, yet that regulation is not prohibition, and that there is nothing in the act that amounts to prohibition. The language of the court is: "The statute does not prohibit the introduction and sale of liquors made outside of the state. It simply taxes the person who carries on the business here by making sales in this state. It in no way interferes with the introduction of the liquors here. It tolerates and regulates, but seeks not to prohibit. I think in this case no question can be successfully made under the clause of the constitution until the point has been reached where regulation ceases and prohibition begins." We are unable to adopt the views of that learned tribunal as here expressed. It is the power to "regulate" commerce among the several States which the Constitution in terms confers upon Congress ; and this power, as we have seen, is exclusive in cases like the present, where the subject of regulation is one that admits and requires uniformity, and where any regulation affects the freedom of traffic among the States.

Another argument used by the Supreme Court of Michigan in favor of the validity of the tax is, that it is merely a tax on an occupation which, it is averred, the State has an undoubted right to impose, and reference is made to *Brown* v. *Maryland*, 12 Wheat. 419, 444; *Nathan* v. *Louisiana*, 8 How. 73, 80;

*Pierce* v. *New Hampshire,* 5 How. 593; *Hinson* v. *Lott,* 8 Wall. 148; *Machine Co.* v. *Gage,* 100 U. S. 676. None of these cases, however, sustain the doctrine that an occupation can be taxed if the tax is so specialized as to operate as a discriminative burden against the introduction and sale of the products of another State, or against the citizens of another State.

We think that the act in question operates as a regulation of commerce among the States in a matter within the exclusive power of Congress, and that it is, for this reason repugnant to the Constitution of the United States, and void.

*The judgment of the Supreme Court of Michigan is reversed, and the cause remanded, with instructions to take such further proceedings as may not be inconsistent with this opinion.*

The CHIEF JUSTICE did not sit in this case, nor take any part in the decision.