STATE v. LEWIS R. LONG.

*Constitution—Drummer—Rebates—Taxation.*

1. The license tax imposed upon drummers by sec. 28, ch. 175 (Revenue Act), Laws 1885, does not conflict with the Constitution of the United States.

2. The rebate allowed from the drummers' license tax to merchants paying a purchase tax, by sec. 25 of said Act, does not discriminate against non-residents, since *all persons*, irrespective of their residence, engaged in the business therein designated, are entitled to its benefits.

(*State* v. *Miller*, 93 N. C., 511, cited and approved).

This was a CRIMINAL ACTION, tried before *MacRae, Judge,* at May Term, 1886, of ROWAN Superior Court.

The defendant was charged with violating section 28 of chapter 175 of the Acts of 1885, entitled "An act to raise Revenue," and upon his trial the jury rendered a special verdict in these terms:

"That Lewis R. Long, the defendant, is a resident of the city of Baltimore, State of Maryland, and is a drummer, salesman and agent of and for Smith, Haneway & Co., a mercantile and manufacturing firm doing business in said

city; that on the 5th day of April, 1886, the defendant being a travelling salesman, agent and drummer, as aforesaid, in the town of Salisbury, and county aforesaid, (Rowan), did sell, and attempt to sell, to George Achenback, goods, wares and merchandise, to-wit: baking powders by wholesale, with samples, not having then and there before soliciting orders for said goods and making sale thereof, paid to the State Treasurer a tax of one hundred dollars, and obtained a license so to do, and not having then and there such license in his possession, contrary to said enactment, and with intent to defeat its provisions. Now, if upon the aforesaid facts, it shall appear to the Court that the defendant is guilty, then the jurors find him guilty; and if otherwise, the Court shall adjudge the defendant not guilty, the jurors find him not guilty."

The Court being of opinion that the facts contained in the special verdict do constitute a criminal offence, directed a verdict of guilty to be entered, and adjudged that he pay a fine of two hundred dollars, from which sentence the defendant appealed.

The *Attorney General* and *Mr. Charles M. Busbee*, for the State.

*Mr. John Devereux, Jr.*, for the defendant.

SMITH, C. J. We have had occasion recently to consider the section on which the present indictment is founded, and to define the class of persons intended to be taxed as drummers, a word which seems to have come into general use, in *State v. Miller*, 93 N. C., 511, and we do not propose to renew the discussion.

While to this enactment, separately considered, no objection is made for its want of uniformity to, or its inconsistency with, the Federal Constitution, it is insisted that this conflict is brought about by a rebate authorized in §25 preceding. This section imposes upon merchants, and other

dealers in goods, wares and merchandize, besides an *ad valorem* tax on stock, a further license tax of one tenth of one per centum on the total amount of purchases, estimated semi-annually upon the aggregate of such for the preceding six months, and contains this clause: "Dealers paying a drummer's tax, prescribed in section twenty-eight of this act, shall be allowed a rebate of that amount on his [their] purchase tax for the same time."

As merchants residing out of the State and sending their travelling agents into the State, can have no rebate unless they have here a business liable to the purchase tax, it is insisted that this is a discrimination against non-resident merchants unwarranted by the Constitution of the United States, and is the same as if the drummers tax was put upon one class and not upon the other.

There is no feature in the statute that distinguishes between resident and non-resident itinerant salesmen or between their employés. Both must pay the same privilege tax and enjoy equal advantages under the license issued. Nor is any difference made in respect to the place of product or manufacture of the goods to be sold. The rebating provision applies to all who pay the purchase tax from which the deduction is to be made. The non-resident may have a stationary mercantile business in the State, conducted by himself or an agent, and he is equally entitled to the rebate upon the same tax. Under the law, he stands upon the same footing, with equal right to the same exemption, as the home merchant. If the benefit does not come to him, it is because he has not the tax to pay from which the reduction comes. As was forcibly argued for the State, he possesses all the immunities and privileges that belong to a citizen, and such are protected by the fundamental national law against an invasion by state legislation, and no more can be claimed.

In truth, the disadvantage is with the resident dealer, who is compelled to pay a tax from which the principal of the non-resident drummer or himself, non-resident, is exempt.

The refunding puts them more on equal ground. Certainly there is no forbidden discrimination in the legislation itself, and hence it is sought to be found in the practical operation of the law. This is not always, however, a test of the validity of a statute.

A discriminating license tax on commission merchants dealing in cotton or cane sugar, levied in a northern State, would operate injuriously upon those States where these articles were raised, but this would not render the tax obnoxious to constitutional objections, since in the terms the discrimination is not seen. Undoubtedly a State, where permitted by its own Constitution, may levy taxes upon professions and privileges, and when uniform in assessment, and in authorized rebates, the legislation cannot be deemed discriminating against citizens of other States or their property introduced for the purpose of sale, when precisely the same burden rests upon our own.

The cases to which we have been referred in the argument of defendant's counsel—*The Passenger Cases*, 7 Howard (U. S.), 283; *Woodruff* v. *Parham*, 8 Wall, 123; *Ward* v. *Maryland*, 12 Wall, 418—are not hostile to the views expressed. The first two relate to attempts to impose taxes upon imports from foreign States and from a State in the Union, which are held to interfere with the exclusive right given to Congress "to regulate commerce with foreign nations and among the several States," and denying to a State the right to "levy any imports or duties on imports or exports" without the consent of Congress, except in the enforcement of its inspection laws, art. 1, §§8 and 9.

The Maryland enactment was declared void, because it imposed a *higher license* tax upon agents or drummers not permanently residing in the State, than upon its own residents embarking in the same business, and also discriminated against their selling, unless they paid the increased tax, any goods, wares or merchandise other than agricultural products and articles manufactured in that State.

Delivering the opinion, Mr. Justice CLIFFORD, conceding the power of a State to impose taxes on all sales made within its limits, whether the goods sold are the produce of that or some other State, provided the tax is uniform, proceeds to say: "That a tax discriminating against the commodities of the citizens of the other States of the Union would be inconsistent with the provisions of the Federal Constitution, and that the law imposing such a tax would be unconstitutional and invalid."

In *Machine Co.* v. *Gage*, 100 U. S., 676, cited in the brief of counsel representing the State, Mr. Justice SWAYNE collects and discusses numerous cases in which State legislation has been decided to invade the exclusive power vested in Congress to regulate interstate commerce, by discriminating between citizens of that and of other States, or in goods of their growth and manufacture introduced in the legislating State.

In this case, the act, whose validity was called in question, imposed a tax of ten dollars, subsequently raised to fifteen, upon "all peddlers of sewing machines and selling by sample." The sewing machines charged with the tax, were made in Connecticut, and the Supreme Court of Tennessee gave an authoritative construction of the act as "taxing the peddlers of such machines without regard to the place of growth or of manufacture." Accepting this as the correct construction of the act, the Court, Mr. Justice SWAYNE delivering the opinion, after a full review of the adjudications, declares that "the statute in question, as construed by the Supreme Court of the State, makes no such discrimination," (referring to a discrimination in favor of the State or of the citizens of the State which enacted the law mentioned in a preceding clause). "It applies alike to sewing machines manufactured in the State and out of it. The exaction is not an unusual or unreasonable one. The State, putting all such

machines upon the same footing as to the tax complained of, had an unquestionable right to impose the burden."

The ruling in the recent case of *Walling* v. *Michigan*, 116 U. S., 446, indirectly recognizes the principle upon which the preceding adjudication rests in declaring void a statute of Michigan, set out in full in the case, but which, in effect, imposed a tax upon persons who, not residing or having their principal place of business within the State, engage there in the business of selling or soliciting the sale of intoxicating liquors, *to be shipped into the State from places without it*, but does not impose a similar tax upon persons selling or soliciting the sale of intoxicating liquors manufactured in the State. This is deemed a restraint upon commerce, and the obnoxious features were not removed by a subsequent act, imposing a greater tax upon all persons in the State engaged in manufacturing or selling such liquors therein.

The Court declares this to be "a discriminating tax, leveled against persons for selling goods brought into the State from other States or countries," and to be clearly within the ruling in *Welton* v. *Missouri*, 91 U. S., 275. No such vitiating element is to be found in our enactment, nor can we perceive wherein consists the alleged repugnancy to the Federal Constitution, or any discrimination unfavorable to the non-resident, or any advantage secured to the home dealer and denied to the other.

The General Assembly seems to have aimed to eliminate from the Revenue law the objectionable and discriminating provisions that were present in its earlier enactments, in order to conform its legislation to the requirements of the paramount law of the United States Constitution as authoritatively interpreted by its highest Court. But if such inconsistency, discoverable not in form of the enactment, but from its unequal operation, find a reasonable support in argument, which we do not concede, it is not so apparent as to warrant us in declaring it inoperative and void.

There is no error, and this will be certified for further action in the Court below.

No error.                                                    Affirmed.