Mr. Justice Merrick
delivered the opinion of the court:
I have been assigned to announce the opinion of the court in the case of William J. Hennick, certified to this court, from the criminal court.
The petitioner, as it appears by his petition, was convicted before the police court upon an information against him as a commercial agent, or drummer, so-called. The information states :
“That on the 14th day of April, 1887, at the city of Washington he did engage in the business of a commercial agent, to wit: the business of offering for sale as agent of Lyons, Conklin & Co., a firm doing business in the city of Baltimore, State of Maryland, certain goods, wares and merchandise, by sample, catalogue and otherwise, without having first obtained a license to dioso ; contrary to the provisions of an act of the legislative assembly.”
Prior to the decision of the Supreme Court of the United States' at its present term, in the case of Robbins vs. Taxing District of Shelby County, 120 U. S., 489 ; S. C. 1 Interstate Com. Rep., 45, there had been very great diversity of opinion throughout the United States as to the power of a State to tax commercial agents who were transacting business by selling goods by sample or by soliciting contracts for sale of goods owned by persons in other States than where the solicitation or sale was made. That diversity of opinion not only pervaded the legal profession, but, as it appears by this, recent decision of the supreme court, it still existed in that tribunal; so that there is a complete.justification for those who entertained that opinion, and who urged the liability under such laws.
By justification I mean justification up to the time that decision was pronounced. That decision being pronounced, however, it is obligatory upon all other tribunals and upon citizens of the United States.. It is not obligatory upon the supreme court itself, as a final adjudication, because it is liable to be reviewed by it and reversed by it if, in its better judgment hereafter, it should entertain a different opin *499 ion from that which has been expressed by itself, because it is a well defined rule, announced by that court, that in constitutional questions the rule of stare decisis is not obligatory upon itself.' Constitutional questions are always open for revision by the supreme court itself, notwithstanding there there may have been one or more decisions upon the subject. But, while open for revision by that court such decisions, until reversed by it, are obligatory upon all other tribunals,-and demand implicit obedience from all citizens throughout this land.
In the case of Robbins vs. Shelby County it was decided that a state law imposing a tax upon commercial agents who solicited contracts for sale of property owned by citizens-of another State was beyond the power of the State to enact or enforce; that it was in contravention of the constitutional provision that Congress should have the exclusive power of regulating commerce between the States, a tax upon commercial agents or drummers of one State soliciting business within another State being a tax upon interstate commerce.
It was said in argument that that decision did not cover the whole proposition, that it was limited only to discriminations which were made by the Statute of Tennessee as against the citizens of other States, and that if the law had been equally as applicable to all travelers the decision would not cover it. But an inspection of that decision shows this to be a mistaken view of the subject. The court grasped the whole matter, discussed the whole matter fully, and decided the precise point as law, as will bo seen from the following quotation from the decision:
“Butto tax the sale of such goods, or the offer to sell them, before they are brought into the State, is a very different thing, and seems to us clearly a tax-on interstate ■commerce itself. It is strongly urged, as if it were a material point in the case, th$t no discrimination is made between domestic and foreign drummers, — those of Tennessee and those of other -States, — that are all taxed alike. But that does not meet the difficulty. Interstate commerce can *500 not be taxed at all, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the State. This was decided in the ease of State Freight Tax Cases, 15 Wall., 232. The negotiation of sales of goods which are in anothor State, for thepurpose of introducing them into the State in which the negotiation is made is interstate commerce. A New Orleans merchant cannot be taxed there for ordering goods from London or New York, because in the one case it is an act of foreign, and in the other of interstate commerce, both of which are subject to regulation.by Congress alone.”
Thus it will be seen that it does not put the decision at all upon the question of discrimination between drummers within the State and drummers outside the State; but it says that no law which imposes upon the person soliciting sales for merchants outside of the State is admissible, because that is a regulation of interstate commerce.
In connection with that decision it is well to read an extract from the opinion of the Supreme Court of the United States in the case of Walling v. Michigan, in 116 U. S., 456, which is as follows :
“ The subjects indeed upon which Congress can act under this power are of infinite variety, requiring for their successful management different plans or modes of treatment. Some of them are national in their character, and admit and require uniformity of regulation, affecting alike all the States; others are local, or are mere aids to commerce, and can only be properly regulated by provisions adapted to their special circumstances and localities. Of the former class may be mentioned all that portion of commerce with foreign countries or between the States which consists in the transportation, purchase, sale and exchange of commodities. Here there can of necessity be only one system or plan of regulation, and that Congress alone can prescribe. Its nonaction in such cases, with respect to any particular commodity or mode of transportation, is a declaration of its purpose that the commerce in that commodity or by that means of transportation shall be free. There would others *501 wise be no security against conflicting regulations of different States, each discriminating in favor of its own products and citizens, and against the products and citizens of other States. And it is a matter of public history that the object of vesting in Congress the power to regulate commerce with foreign nations and among the States was to insure uniformity of regulation against conflicting and discriminating State legislation.”
And further down on page 457 [695] it is said:
“And after an examination of the causes which led to the adoption of the Federal Constitution, one of the principal of which was the necessity for the regulation of commerce and the laying of imposts and duties by a single government, the court say: ‘But whatever may be the motive for the tax, whether revenue, restriction, retaliation or protection of domestic manufactures, it is equally a regulation of commerce, and in effect an exercise of the power of laying duties on imports; and its exercise by the States is entirely at war with the spirit of the Constitution, and would render vain and nugatorj the power granted to Congress in relation to those subjects. Can any power more destructive to the union and harmony of the States be exercised than that of imposing discriminating taxes or duties on imports from other States P Whatever may be the motive for such taxes, they cannot fail to beget irritation and lead to retaliation ; and it is not difficult to foresee that an indulgence in such a course of legislation must inflame and produce a state of feeling that would seek its gratification in any measures regardless of the consequences/ ”
Such is the declaration by the Supreme Court of the United States, of the spirit and scope of these constitutional provisions ; that they are necessary to the harmony and repose of the States; that they are necessary to the equal justice and equal privileges of the citizens of all the States of this Union; that they cannot be restricted at all; and that whatever rule is made with reference to them must be a uniform rule by the Congress of the United States acting as the National Legislature, regulating and controlling the *502 commerce of the entire domain of the United States, with a view to do equal justice between all the parts of the country and to take away any possibility of prejudice or any suggestion of injustice or discrimination by one as against. another. That being so, it is manifest that any regulation upon this subject must be a regulation by Congress, in its capacity as the National Legislature.
Now, could Congress, if it had been so disposed, have delegated to the legislative assembly of this District the power to pass any such law? That is not an open question in this court. In- the case of The District vs. Waggaman, 4 Mackey, 333, this court said:
“In Roach vs. Van Riswick, 7 Wash. Law Rep,, 496, this-court held that the very broad terms in which the organic-act of ISIO granted legislative powers to the legislative-assembly had the effect to clothe that body with only such powers as might be given to a municipal corporation, and that it was not competent for Congress to-delegate the larger powers- o-f general legislation which it had itself received from the Constitution.”
We have already shown by these extracts that this subject matter belongs to the larger power of general legislation — belongs to Congress as the legislature- of the Nation. It could not, therefore-, within- this-announcement, delegate-any such part of its general legislative power to a municipal legislative body. It is- altogether outside the- scope of a-municipal body to legislate on this subject.
It would be marvelous indeed if, when the Constitution-strips all the States of this- Union of power to legislate on this subject, it could be pretended tha-t a municipal body could he clothed with any such faculty. If a State cannot do it, how can a body inferior to a- State do it? How can it be said to be within the power of a municipal corporation, when it is not within the power of a sovereign State, to legislate upon this subject matter? It would seem sufficient to stop at this point.
But it has been said here in argument that the Congress of the United States- having the- exclusive legislative- power *503 of this District of Columbia, there is no restriction upon its capacity to act as such legislature. If the question were before the court in that aspect, it would not be difficult to say that it is a proposition that cannot be entertained by any who regard the comprehensive power of the Constitution, the object for which it was formed, or the purposes for which the District of Columbia was dedicated to national uses, to maintain that a body may be established here in legislative form, in antagonism to the rights of the various States of this Union.
This community is not even a State. It is an organized body to be legislated over by Congress alone. This District has surrendered its right of representation, and that representation is vested in Congress; but still it is vested in Congress as the National Legislature, and it is to be exercised by Congress in subordination to the principles of the Constitution of the United States. The argument, pushed to its extreme, would simply be this: Congress is without •constitutional restraint as to this District; the people are helpless, and not under the sanctions or protection of the Constitution of the United States at all; the United States has here a foreign territory in which it can legislate in antagonism to the interests of the States and in opposition to the policy which prevails in the Constitution, obligatory ■upon the States in their intercourse one with another to do equal and exact justice, one as to the other and each as to all. Such an argument cannot have any sanction at the hands of this court. This District is set aside and dedicated to the uses of the Nation, and if there be anywhere on the face of the earth a locality where no discrimination should he made as against the rights of any of the States or any •citizens of the United States, it should be upon this soil where all are equal, on which each citizen has an equal right and in which each State has an equal right, as regards all the other States and as regards the United States itself. This territory is dedicated simply as a temple of justice, as a temple where the liberties of the Nation are to be sacredly preserved; and it is for that purpose that it should be ex *504 empt from hostile control or the possibility of antagonism with the purposes of the Union. Congress was vested with the power of exclusive legislation for this District, but not at all for the purpose of enabling it to legislate in any manner in hostility to the rights of any of the States of the Union.
Can it be supposed for an instant that any of the States would have ceded to the Government of the United States a district for the seat of its government in which hostile legislation should be exercised towards the interests of the citizens of those States or the citizens of their sister States? We cannot suppose such a thing possible. We cannot suppose that when the Congress was vested with power to legislate over this District it was clothed with any' power to act as such legislature in hostility to the rights of the States or to do anything regarding the interests of the citizens of one State which any State of the Union could not do with regard to the citizens of any other State. We are subject to the Constitution of the United States. Here, if anywhere, the Constitution should be venerated, and the most sedulous regard should be had for each and all of its provisions, and we should rejoice that we are under its provisions ; we should rejoice that we are under its protection; we should rejoice that we are set apart for the purpose of ministering at the temple of justice, the temple of “Equality of Laws ” which has been established in our midst.
It seems impossible, therefore, to argue from the fact that Congress has exclusive legislation- over this District — that it has the power of the tyrant through this District over the States of the Union. The whole idea is inconsistent with the spirit of out institutions, utterly inconsistent with the- object for which the Constitution was formed, and for which this district of country was set apart for the uses of the general government. Therefore, even if Congress had undertaken, with regard to this District, in its general capacity as the legislature for the District, to pass such a law, it would have been outside the power of congress so to do; because,, as a National Legislature, it can only legislate *505 under the commercial power upon the principle of uniformity, which is to pass laws equally operative upon any, every and all parts of the Union; and therefore any discrimination in favor of this community would be in violation of the spirit, if not the letter, of the Constitution of the United States.
But we need not go that far for the purposes of this case. It was only necessary to speak of it for the purpose of repelling the argument, and making it be seen how we regard the relations of this community to the legislative power of Congress and to the several States of the Union. It is enough for the purposes of this cause to say that the delegated power to the legislative, assembly of this 'District was the delegation only of municipal power, and that any attempt to legislate in this respect is ultra vires a municipality as it is ultra vires the power of a State of this Union.
For these reasons the court is of opinion that the prosecution was without authority; that so far as this law operates on this class of cases it is null and void, and that the prisoner must be discharged from custody.
But it is necessary to add that this decision on this branch of the law is not at all inconsistent with the decision that was made in the Case of Waggaman, where it was held that the Legislative Assembly was empowered to impose a license tax upon people doing business within the District of Columbia. All occupations which are limited to the District of Columbia are subject to the taxing power. That is what was held in that case, and there is nothing in this case at all inconsistent with it. If this party had taken out a license for the District, for the purpose of soliciting business within the District, for sales by people within the District, he might have been subject, and would have been subject, to the license law. But upon the face of this information it appears affirmatively that his exclusive business was to act as the agent of citizens of ■other States, soliciting contracts of sale for goods within those States, thereafter to be brought under the dominion, and within the control of the taxing power of the District. *506 Therefore, there is no inconsistency between the two decisions. They are entirely harmonious, and there can be no difficulty in maintaining that in the aspect in which this case is presented, it is directly in the face of the decision in Bobbins vs. Shelby County, directly in opposition to the whole current of decisions upon the commercial power of the United States as expounded by the Supreme Court of the United States, and cannot be permitted to stand as law.
Mr. Biddle: If I apprehend this decision correctly, it leaves the law to be enforced against the citizens of the District.
Mr. Justice Merrick: Unquestionably.
Mr. Biddle: The license law can be enforced against the citizens of the District ?
Mr. Justice Merrick: Against citizens of the District who are soliciting sales for people within the District. But a citizen within the District who is employed as an agent of a citizen of another State, for the purpose of selling the goods of that citizen of the other State, cannot be restrained from so doing by the Legislative Assembly.
Mr. Biddle: I quite apprehend that.
Mr. Justice Merrick: And further than that, I will say that if his business had heen to solicit business as a drummer of the District, and he had mingled with it the business of the people of a State, he would be obnoxious to the law, not for soliciting business for citizens of States, but as acting as a drummer generally. But here, the information says that he is charged with doing exclusively the business of a commercial agent, soliciting and selling his goods for citizens of other States. That is the exclusive business with which he is charged, and therefore it may well stand with the other matter about which the counsel has made the inquiry.