(Cuyahoga County Court of Common Pleas.)

IN THE MATTER OF THE APPLICATION OF FRANK YANDERS FOR WRIT OF
HABEAS CORPUS.

The act of the General Assembly of Ohio, of May 19, 1894, requiring all persons in Ohio,
dealing in convict-made goods made in prisons of other states, to procure a license
from the Secretary of State for such business, is an interference with interstate
commerce, and therefore is in violation of section 8, clause 3, of article 1, of the con-
stitution of the United States.

(Decided December, 1894.)

NOBLE, J.

The application sets forth that Frank P. Yanders is restrained of his
liberty by George F. Arnold, a constable, and that he is so restrained by
virtue of a warrant issued by George R. McKay, a Justice of the Peace, and
the warrant charges him with unlawfully exposing for sale in this city
certain convict-made goods, to-wit: brushes made by convicts confined in
the penitentiary of the state of New York, without first having obtained
a license therefor from the Secretary of State of Ohio, such goods not being
the product of any prison or penal institution of Ohio, with knowledge on
the part of Yanders that they were such convict-made goods, and in vio-
lation of the law passed by the General Assembly May 19, 1894, and tak-
ing effect January 1, 1895. The act is as follows:

"Section 1. *Be it enacted by the General Assembly of the State of Ohio*,
That it shall be unlawful for any person, persons or corporation, to ex-
pose for sale within the state of Ohio, without first obtaining from the
Secretary of State a license to sell, any convict-made goods, merchandise
or wares, as hereinafter provided.

"Section 2. Every person, persons or corporation desiring to act as
agents for or to deal in convict-made goods, merchandise or wares, before
exposing such goods within the limits of the state of Ohio, shall make an
application in writing to the Secretary of State, setting forth his or their
residence or office, the class of goods he, they or it desires to deal in, the
town, village or city, giving the street number at which he, they or it in-
tends to locate, together with the names of two or more responsible citizens
of the state of Ohio, who shall enter into a bond of not less than five thous-
and dollars to guarantee that the said applicant will, in all and every par-
ticular, comply with any and all laws of the state of Ohio, regulating and
prescribing the sale of convict-made goods, wares and merchandise.

" Section 3. The secretary of state shall thereupon issue a license to
such applicant for one year, except as hereinafter provided, which license
shall set forth the names of such person, persons or corporation, and shall be
kept conspicuously posted in his, their or its place of business."

Section 4 provides for an annual statement to the secretary of state.

"Section 5. Every person, persons or corporation shall pay annually,
upon the issue of said license as hereinbefore provided, the sum of five
hundred dollars to the secretary of state as a license fee, which amount shall
be credited to the maintainance account of the state prison."

Section 6 provides that licenses shall be for one year.

Section 7 provides that the secretary of state shall have power to re-
voke a license under certain conditions.

Section 8 provides the duties of the commissioner of labor statistics
and the prosecuting attorney in relation to prosecutions for the violation of
this act.

Section 9 provides for the furnishing of evidence as to violations, and
the disposition of one-half of fine,

Section 10 provides that nothing in this act shall affect the products of the prisons or other penal institutions of the state of Ohio; and,

Section 11 provides that it shall take effect and be in force from and after the first day of January, 1895.

The contention is, on behalf of the applicant, that the law is unconstitutional, in that it discriminates between goods manufactured within this state and those manufactured without the state. The clause of the constitution which it is claimed is violated, is section 8, third clause, article 1 of the constitution of the United States, which provides that congress shall have power to regulate commerce with foreign nations and among the several states and with the Indian tribes.

The doctrine seems to be well settled that power is vested in congress alone to regulate commerce among the states, and that the non-exercise of its power is saying in substance that commerce shall be unrestricted, and that it is not unrestricted when discriminating burdens are placed upon goods of foreign manufacture. It seems to be settled beyond question as the law, that a state has no authority to impose a burden upon foreign manufactured goods, which is not imposed on goods manufactured within the state, even though it be sought to be justified under this claim of police power.

This particular claim was made in the case of *Walling* v. *Michigan*, reported in 116 U. S. 459. In that case the state of Michigan had imposed a tax on persons not residing or having their principal place of business in the state, engaged in selling or soliciting sales of intoxicating liquors *to be shipped into the state.* But the Supreme Court of the United Shates held that so long as it discriminated against citizens and products of other states in the matter of commerce between the states, it usurped one of the prerogatives of the national legislature, and that it could not be set up to control the inhibitions of the federal constitution or the powers of the United States government created thereby. That the license to do business is in the nature of a discriminating tax, and that it is such a burden as is inhibited, there can be no doubt.

. In the case of *The State* v. *North & Scott*, 27 Mo. 464, and quoted approvingly by the Supreme Court of the United States in the Walling case, the court expressly held that the exaction of a license tax as a condition of doing any particular business, is a tax on the occupation, and a tax on the occupation of doing a business, is surely a tax on the business; and that a state has no right to levy a tax in this or any other form, on interstate commerce, either by way of duties on transportation, or on the receipts from such transportation, or on any other occupation or business of carrying it on, because such a tax is a burden on that commerce, and amounts to a regulation of it, which belongs solely to congress.

The latest deliverance of the Supreme Court on the subject is in the case of *Brennan* v. *Titusville*, 153 U. S. Sup. Ct. 289, wherein Mr. Justice Brewer uses the following language:

"It is undoubtedly true that there are many public regulations which do affect interstate commerce which have been and will be sustained as clearly within the power of the state. But we think it must be considered, in view of a long line of decisions, that it is settled that nothing which is a direct burden upon interstate commerce, can be imposed by the state without the assent of congress."

In this case a large number of authorities upon the question of interference by state regulation with interstate commerce are cited, among which are: *Welton* v. *Missouri*, 91 U. S. 275; *Robbins* v. *Shelby Taxing District*, 120 U. S. 489; *Leloup* v. *Mobile*, 127 U. S. 640; *Ashler* v. *Texas*, 128 U. S. 129; *Stoughtenberg* v. *Hennick*, 129 U. St. 141; *Lying* v. *Michigan*, 135 U. S. 61-6; *McCall* v. *California*, 136 U. S. 104-111; *Crutcher* v. *Kentucky*, 141 U. S. 47-71.

In all these cases the general doctrine is fully maintained that no state can levy a tax on interstate commerce in any form, either by way of duties, levied on the transportation of the subject of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on.

But it is claimed by counsel for the state that by leaving out section 10, which is the section providing that nothing in the act shall affect the product of prisons in the state of Ohio, the act should stand, and that it is the duty of the court, if possible, to hold the rest of the law constitutional, although it may be its duty to declare that section unconstitutional. Leaving that out, every one who sold convict-made goods except as in the act provided, would be subject to punishment, and it would come squarely within the case of *Robbins* v. *Shelby Taxing District*, 120 U. S. 489, above referred to.

Robbins was soliciting in Memphis, Tennessee, sales of goods for a Cincinnati house. The state of Tennessee had a law requiring a license tax for this business, and made no distinction between those who represented business houses out of the state, and those representing business houses within state; so that there was no element of discrimination. But when the Supreme Court of the United States came to review a conviction of Robbins under this law, the conviction was set aside, on the ground that whatever the state might see fit to enact with reference to a license fee upon those who acted as drummers for houses within the state, it could not impose upon those who acted as drummers for houses outside of the state, (and who therefore were engaged in interstate commerce), any burden by way of a license tax. Mr. Justice BRADLEY upheld in a most elaborate and exhaustive way the exclusive power of congress over interstate commerce, and that its failure to make express regulation indicates its will that the subject shall be left free from any restrictions or impositions, and that whatever may be the extent to which the police power of the state may go, it cannot go so far as to uphold any regulations directly affecting interstate commerce.

So that, leaving out section 10 would hardly help the constitutionality of the balance of the act, both on reason and authority.

The conclusion I have arrived at then is that the law imposes a discriminative burden upon one who sells convict-made goods manufactured in states other than Ohio, and is in effect a tax upon foreign made goods, and therefore unconstitutional, and the arrest made under it void, and the applicant is discharged.

*Goulder, Wing & Holding*, for the applicant.

*P. H. Kaiser, Ass't Pros'g·Att'y*, for the state.