PROVIDENCE COAL COMPANY *vs.* PROVIDENCE & WORCESTER RAILROAD COMPANY *et als.*

The provisions of Pub. Stat. R. I. cap. 139, which forbid discrimination by a common carrier in his charges for transportation, apply to contracts made in this State for transportation to points beyond the State.

These provisions so applying are not in conflict with the clause of the Constitution of the United States, Art. I. § 8, "Congress shall have power . . . to regulate commerce . . . with foreign nations and among the several states."

When a railroad is built by corporations located in and chartered by different states, and these corporations consolidate, they make but one corporation, whose acts and neglects are done by it as a whole.

BILL IN EQUITY for an account and an injunction. On exceptions to the answer. The questions raised are stated in the opinion of the court.

The charter of the respondent corporation, granted at the May session of the General Assembly, A. D. 1844, contains the following provisions: —

" SECT. 15. The said Providence and Worcester Railroad Company are hereby authorized to unite with a railroad company which may be empowered by the legislature of the State of Massachusetts to construct a railroad from the northern terminus of the railroad authorized by this act, to the town of Worcester. And when the two companies shall have so united, the stockholders of one company shall become stockholders in the other company. And the two companies shall constitute one corporation, by the name of the Providence and Worcester Railroad Company, and all the franchises, property, powers, and privileges granted or acquired under the authority of the said States respectively shall be held and enjoyed by all the said stockholders in proportion to the number of shares or amount of property held by them respectively in either or both of said corporations.

" SECT. 16. One or more of the directors or other officers of said Providence and Worcester Railroad Company, as is provided in the preceding section, shall at all times be an inhabitant of this State, on whom processes against said company may be legally served ; and said company shall be held to answer in the jurisdiction where the service is made and the process is returnable.

" SECT. 17. The said company shall keep separate accounts of their expenditures in the States of Rhode Island and Massachusetts respectively ; and two commissioners shall be appointed, one by the governor of each of said States, to hold their offices for the term of four years, and to be reasonably compensated by said company, who shall decide what portion of all expenditures of said company, and of its receipts and profits, properly pertain to that part of the road lying in said States respectively, and the annual report required to be made to the legislature of this State shall be approved by said commissioners.

" SECT. 18. The said company and the stockholders therein, so far as their road shall be situated in this State, shall be subject to all the duties and liabilities of the Providence and Worcester Railroad Company created by the provisions of this act, and to the general laws of this State, to the same extent as the said Providence and Worcester Railroad Company and the stockholders therein would have been had the whole line of said railroad been located within the limits of this State.

" SECT. 19. The provisions contained in the four preceding sections shall not take effect until said provisions shall have been accepted by the stockholders of the said two corporations respectively, at a legal meeting called for that purpose."

And the charter granted by the General Court of the State of Massachusetts in A. D. 1844 contains similar provisions.

*James Tillinghast*, for complainants in support of the exceptions.

The questions raised by the answer and by these exceptions may be classified as follows : —

The defendants refuse to answer as to any portion of the line of their railroad lying outside of the limits of this State.

The grounds for this refusal, as stated in the answer, are, —

*First.* " That they are not bound to answer to any charge of discrimination alleged to have been made outside of this State, and by a common carrier, other than the defendant corporation.

*Second.* " That commerce among the states is not and cannot be controlled and determined by the common law or by the sta'-ute of this State, but is, by express provision of the Constitution of the United States, subject to regulation and control by act of Congress, and in no other way or manner."

The first ground assumes, though the answer nowhere avers, that the Massachusetts part of the road and its management are entirely distinct from the Rhode Island part.

The bill, in its first paragraph, charges that the main line of the road extends from Providence to Worcester, and the first exception is that this is in no way answered.

The bill also alleges, and the answer admits, that the defendant is a corporation of this State.

The statute, Pub. Stat. R. I. cap. 24, § 15, provides that every act of incorporation " shall be so far deemed a public act that the same may be declared on and given in evidence without specially pleading the same."

And by the express provisions of the defendant's act of incorporation the consolidated company forms but one corporation, and is expressly made " subject to all the duties and liabilities of the Providence and Worcester Railroad Company created by the provisions of this act, and *to the general laws of this State*, to the same extent as the said Providence and Worcester Railroad Company, and the stockholders therein, would have been had the whole line of said railroad been located within the limits of this State."

Although the legal status of the company would have been the same without this express enactment, yet its amenability to the laws of this State is thus made an express condition of and a limitation upon the defendant's existence here, and its right to exercise its franchises, which cannot be evaded in our own courts, as is attempted by this answer. Compare *Peik* v. *Chicago, &c. R. R. Co.* 94 U. S. 164, 176, 177.

It is well settled that such a corporation is but one entity, "and that the acts and neglects of the corporation are done by it as a whole." *Horne* v. *Boston & Maine R. R. Co.* 18 Fed. Reporter, 50.

The second ground for this refusal to answer as to the part of the line in Massachusetts, based as it is upon the " commercial clause," so called, of the Constitution of the United States, is equally untenable.

a. It does not at all meet that phase of the bill which well rests upon the common law obligation of the defendant corpora-

tion as a common carrier to carry for all alike without discrimination.

For the suggestion that this provision of the Constitution *proprio vigore* absolves all interstate common carriers from all common law obligations whatever, even in the absence of any action by Congress under it, is utterly without foundation, and well indicates, we think, how recklessly this answer is made.

The doctrine contended for here by the defendant would exempt it from liability for loss of goods or injury to passengers where the contract of carriage extended beyond the State, — plainly, we submit, a *reductio ad absurdum.* Compare Waite, C. J., in *Hall* v. *De Cuir,* 95 U. S. 485, 490.

b. But, if the case rested upon the statute only, the statute is not obnoxious to this constitutional provision. It is clearly within *Railroad Co.* v. *Fuller,* 17 Wall. 560; *Chicago, &c. R. R. Co.* v. *Iowa,* 94 U. S. 155, 163; *Peik* v. *Chicago, &c. R. R. Co.* 94 U. S. 164; *Chicago, &c. R. R. Co.* v. *Ackley,* 94 U. S. 179; " the Granger cases," sustaining the freight limitation acts of Iowa and Wisconsin, and under which the decisions of the Supreme Court of Iowa in *Carton* v. *Illinois Central R. R. Co.* 59 Iowa, 148, and of Judge, McCrary in *Kaeiser* v. *Illinois Central R. R. Co.* 8 McCrary, 496; 18 Fed. Reporter, 151, cited by the defendants, were clearly wrong. And compare *Sherlock* v. *Alling, Adm'r,* 93 U. S. 99. See the question also exhaustively considered in *Western Union Telegraph Co.* v. *Pendleton,* 95 Ind. 12; and affirmed in Indiana in *Western Union Telegraph Co.* v. *Ferris,* 103 Ind. 91. Compare, also, *Southern Express Co.* v. *St. Louis, Iron Mountain & Southern R. R. Co.* 10 Fed. Reporter, 210; *Wells, Fargo & Co.* v. *Oregon Ry. & Nav. Co.* 15 Fed. Reporter, 561; 18 Ib. 517, 667. All these exceptions, therefore, should be sustained.

*Charles Hart & Edwin Metcalf,* for respondents, *contra.*

The respondents properly decline answering as to matters which may subject them to penalties under Pub. Stat. R. I. cap. 139, § 4; Story's Eq. Plead. §§ 575 '576, 578 *a*; 1 Daniells' Chanc. Plead. & Prac. 563, 716, 717; Adams' Equity, 3–*6; 1 Pomeroy's Eq. Juris. §§ 199, 202; *United States* v. *Saline Bank,* 1 Pet. 100; *Stewart* v. *Drasha,* 4 McLean, 563; *Harrison* v. *Southcote,* 1 Atk. 528, 529.

The statute of this State is not intended to regulate rates of freight outside of Rhode Island, or traffic between states, or, if so intended, is to that extent in violation of Art. I. § 8, Const. U. S., and therefore void. No exception, then, can be sustained on the ground that the answer is silent as to such rates and traffic. *Carton* v. *Illinois Central R. R. Co.* 59 Iowa, 148; *Hall* v. *De Cuir*, 95 U. S. 485, 488, 489; *Kaeiser* v. *Illinois Central R. R. Co.* 8 McCrary, 496; *Louisville & Nashville R. R.* v. *R. R. Commissioners*, 19 Fed. Reporter, 679.

The twenty-five exceptions should all be overruled.

*May* 5, 1886. TILLINGHAST, J. The main questions presented for our consideration by the numerous exceptions to the defendant's answer to the bill are, *first*, whether the provisions of Pub. Stat. R. I. cap. 139, which prohibit discriminations being made by common carriers in the transportation of goods and merchandise, can be construed to affect contracts made in this State for the transportation of goods and merchandise to points beyond the limits thereof; and, *second*, if they can be so construed, whether they are not to that extent in conflict with the "commercial clause" of the Constitution of the United States, which provides that "the Congress shall have power to regulate commerce with foreign nations and among the several states." The defendants are common carriers, owning and operating the Providence and Worcester Railroad, which is situated partly in Rhode Island and partly in Massachusetts. The corporation has been consolidated under the statutes of both states. The bill seeks relief against the defendants for discriminations alleged to have been made by them against the plaintiffs, both on contracts for the transportation of merchandise to points within this State, and also to points without the State, on the line of their road. Most of the exceptions are to the refusal of defendants to answer the allegations of the bill as to business transacted by them on contracts made for the shipment of merchandise to points without the State. The defendants contend that they are not called upon to answer these allegations, because they are only a Rhode Island corporation, owning and operating a railroad wholly in this State; that part of the road beyond the limits thereof being owned and controlled by another and distinct

corporation, created by, and only amenable to, the laws of another state. By the express provisions of the defendants' act of incorporation in this State of May, 1844, §§ 15 to 18, the consolidated company forms but one corporation; and by § 18 it is expressly made subject to all the duties and liabilities of the Providence and Worcester Railroad Company created by the provisions of this act, and *to the general laws of this State,* to the same extent as the said Providence and Worcester Railroad Company and the stockholders therein would have been had the whole line of said railroad been located within the limits of this State. The defendants, then, are a consolidated railroad company, owning and operating a railroad extending, as alleged in the bill, from Providence, Rhode Island, to Worcester, Massachusetts; and we think it is well settled that such a corporation is but one entity, " and that the acts and neglects of the corporation are done by it as a whole." In *Boston, &c. R. R.* v. *New York, &c. R. R.* 13 R. I. 260, 262, this court, speaking of the Boston, Hartford, and Erie Railroad Company, which was chartered by the State of Connecticut, says that it " was not a Rhode Island corporation except so far as it became, by virtue of the sale and action of the legislature, the successor of the Hartford, Providence, and Fishkill Railroad Company. Yet, as a foreign corporation, it might be empowered to own and operate a railroad within this State, the policy of such authority being wholly within the discretion of the legislature." . . . " But the Boston, Hartford, and Erie Railroad Company can hardly be regarded as a foreign corporation. True, it was not a Rhode Island corporation in the sense that it was chartered here, but it was subject to Rhode Island laws and control as fully as a domestic railroad company." And then, after reciting the legislative action concerning it, the court further says, "It was thenceforth a corporation in this State, though not of this State."

In *Scofield* v. *Lake Shore & Michigan Southern R. R. Co.* 1 Western Reporter, 812, wherein this question has recently been fully considered by the Supreme Court of Ohio, the court says : "A further question is presented, whether the decree for plaintiffs should be limited to and enforced only in this State, or should it extend to, and be enforced against, the defendant at all points

reached by defendant's railroad, its branches and connecting lines?" "The District Court finds that the defendant is a consolidated company, its lines of road extending to various points in Pennsylvania, New York, Ohio, Indiana, Michigan, and Illinois. It is an artificial person, and the same person in all this territory, and this court has acquired jurisdiction of the person of the corporation, and the right to enforce all proper decrees against it." . . .

"The railroad is an entirety, whether within the State or without; and the artificial person, by the acts of the several states authorizing consolidation, has been created one, and not two or more, and no reason is perceived why it may not be dealt with by the courts of either state that has procured jurisdiction." "This artificial person not only holds itself out, but does make contracts for the transportation of freight over its connecting lines as well as its own line, and it makes rates to points only reached by connecting lines. No reason is perceived why it should not be ordered to make no discriminations to the injury of the plaintiff in its rates to points thus reached. Of course it may, at any time, refuse to make any rates beyond its own lines; but, if it makes rates to points on connecting lines, the rates should be equal to all." See, also, *McDuffee* v. *Portland & Rochester Railroad*, 52 N. H. 430; *Peik* v. *Chicago, &c. R. R. Co.* 94 U. S. 164, 176; *Horne* v. *Boston & Maine R. R. Co.* 18 Fed. Reporter, 50.

This doctrine is now so fully settled that a review of the cases is quite unnecessary.

Construing the statute, then, to include contracts for the transportation of merchandise to points without the State on the line of defendants' road, is it obnoxious to the constitutional provision before mentioned? We do not think it is. It is not, in our judgment, a regulation of commerce within the meaning of the "commercial clause" as heretofore construed, either by the state courts or by the final arbiter of questions of that sort, the Supreme Court of the United States. It opposes no obstruction and causes no delay to commerce. Neither does it lay any tax thereon so as to make it obnoxious to the rule as laid down by the Supreme Court of the United States in *Hays* v. *Pacific Mail Steamship Co.* 17 How. U. S. 596; *Morgan* v. *Parham,* 16 Wall.

471; *Steamship Co.* v. *Port Wardens*, 6 Wall. 31; *Case of the State Freight Tax*, 15 Wall. 232 ; *Henderson et al.* v. *The Mayor of New York*, 92 U. S. 259; *Walling* v. *Michigan*, 116 U. S. 446; *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196, and many others of the same class. It simply prohibits discrimination being made in favor of one and against another having occasion to use the facilities afforded for the transportation of goods by common carriers *under like circumstances*, a substantial declaration of the common law doctrine upon this subject. *Messenger et al.* v. *Pennsylvania R. R. Co.* 37 N. J. Law, 531; *Chicago, &c. R. R. Co.* v. *The People*, 67 Ill. 11. And although a statute of this sort may doubtless be properly said to *affect* commerce, yet, as held in the *State Tax on Railway Gross Receipts*, 15 Wall. 284, 293, " it is not everything that affects commerce that amounts to a regulation of it within the meaning of the Constitution." In *Peik* v. *Chicago, &c. R. R. Co.* 94 U. S. 164, in which the power of the legislature of Wisconsin to provide by law for a maximum charge to be made for fare ..... freight for the transportation of persons and property carried within the State, or taken up outside the State and brought within it, or taken up inside and carried without, was considered, the Supreme Court of the United States says : —

" As to the effect of the statute as a regulation of interstate commerce, the law is confined to state commerce, or such interstate commerce as directly affects the people of Wisconsin. Until Congress acts in reference to the relations of this company to interstate commerce, it is certainly within the power of Wisconsin to regulate its fares, etc., so far as they are of domestic concern. With the people of Wisconsin this company has domestic relations. Incidentally these may reach beyond the State. But certainly, until Congress undertakes to legislate for those who are without the State, Wisconsin may provide for those within, even though it may indirectly affect those without."

In the case of *Chicago, &c. R. R. Co.* v. *Iowa*, 94 U. S. 155, 161, the same doctrine was maintained.

The conclusion deducible from the numerous decisions bearing upon this subject, as well stated by the Supreme Court of Indiana in *Western Union Telegraph Co.* v. *Pendleton*, 95 Ind. 12,

" is, that the states cannot embarrass commercial communication, abridge the freedom of commerce, discriminate in favor of the products of one state, lay burdens upon the instruments of commerce, or exact licenses from persons, natural or artificial, engaged in interstate commerce."    See cases there cited.

Accepting this as a summary of the law applicable to the case before us, we do not see that the statute under consideration is obnoxious thereto.    Commercial intercourse is not thereby abridged or fettered, and no new duty or burden is imposed thereon.    The defendants are only called upon to do, under a certain penalty, precisely what the common law declares it to be their duty to do without the statute, viz., to treat all alike under similar circumstances, — a mere police regulation.

The Supreme Court of Illinois has recently had occasion to construe a similar statute, and in so doing, *inter alia*, says :  " It is no doubt true that the statute to prevent unjust discrimination in the rates of charges of railroad companies, under which this action was brought, may affect commerce, but in our judgment it cannot be said to be a law regulating commerce among the states, within the meaning of the Federal Constitution.    The law does not purport to exercise control over any railroad corporation except those that own or operate a railroad in the State, such corporations as have domestic relations with the people of the State ; and, as we understand the decisions of the Supreme Court of the United States, similar laws enacted by state authority have been upheld and sustained, although such laws may affect commerce."    *The People* v. *Wabash, St. L. & P. R. R. Co.* 104 Ill. 476.    See, also, *Hall* v. *De Cuir*, 95 U. S. 485, 487 ; *Peik* v. *Chicago, &c. R. R. Co.* 94 U. S. 164 ; *Chicago, &c. R. R. Co.* v. *Iowa*, 94 U. S. 155 ; *Munn* v. *Illinois*, 94 U. S. 113.

The exceptions are sustained in so far as they are based upon the omission of the defendants to answer the allegations of the bill as to transactions reaching beyond the limits of the State.

NOTE. — Subsequently to the above opinion the Supreme Court of the United States, October 25, 1886, gave its decision in the case of *Wabash, St. Louis & Pacific Railway Company* v. *Illinois*, 118 U. S. 557.   This decision seems to annul legislation like that above considered as being in conflict with the Constitution of the United States.