INTERNATIONAL EXPRESS CO., in equity, *vs.* GRAND TRUNK RAILWAY OF CANADA.

Cumberland.   Opinion December 13, 1888.

*Railroads.   Express Companies.   Equal facilities.   R. S., c. 51, § 134.*

There is a marked distinction, recognized by the statutes and judicial decisions, between the general business of express companies and that of railroad companies.

Foreign express companies are entitled equally with domestic express companies, to the facilities of transportation over our railroads, by virtue of the statute which extends equal protection "to all persons engaged in the business" within the state.

Where a defense is set up, to a bill in equity which seeks to require a railroad corporation to transport over its road the freight of an express company, that the railroad is itself doing all express business over its road, the burden is on the railroad corporation to show that it is actually engaged in doing such business to the exclusion of all other persons and corporations alike.

*N. E. Express Co.* v. *Maine C. R. R. Co.*, 57 Maine, 188, affirmed.

ON REPORT. Bill in equity by the International Express Co., which sought to require the defendant corporation to transport over its road the complainants' freight. The bill was filed May 25, 1885, and an interlocutory injunction granted, to continue during the pendency of the suit, a sum being agreed upon by the parties, for the service rendered. Answer and replication were duly filed. The case came before the court for a final decree upon bill, answer and proof.

The findings on issues of fact appear in the opinion.

*S. C. Strout, H. W. Gage and F. S. Strout,* for complainant.

Upon the questions of law, counsel cited: *N. E. Express Co.* v. *M. C. R. R. Co.*, 57 Maine, 188; *McDuffee* v. *Railroad*, 52 N. H. 430; *Munn* v. *Illinois*, 4 Otto, 113, 126; *Olcott* v. *Supervisors*, 16 Wall. 678, 696; *Com.* v. *Railroad*, 63 Maine, 269; Woods' Railway Laws, vol. 1, pp. 563, 565, 587; *Bennett* v. *Dutton*, 10 N. H. 486; Redfield on Railways, 2d ed., p. *242; Redfield on Carriers, § 65; *Sanford* v. *Ry. Co.*, 24 Pa. St., 378; *Dinsmore* v. *Louisville, &c., R. Co.*, 2 Fed. Rep. 465; *Texas Express Co.* v. *Texas & Pacific R. Co.*, 6 Fed. Rep., 427; *Wells* v. *Oregon Ry.*, 16 A. & E. R. Cases, 87; *Express Cases*, 117 U. S. Sup. Ct., 1, 20; *Express Cos.* v. *Railroads*, 10 Fed. Rep. 210; *Southern Express Co.* v. *L. & N. R. Co.*, 4 Fed. Rep. 482; *Memphis R. R.* v. *Tennessee*, 9 Tenn. 118; (13 A. & E. R. Cases, 423.) *Coe* v. *L. & N. R. Co.*, 3 Fed. Rep. 775, 781.

*Sargent* v. *B. & L. R.*, 115 Mass. 416, 423, cited by defendant has no application to the law and facts of the case at bar. In that case the plaintiff had formerly carried on business upon defendants' railroad, receiving certain accommodations which defendant took away from him. He demanded "to be allowed to continue * * * as formerly." The court say: "The gravamen of his complaint, then, is not that the defendants have refused to give him

equal terms, facilities and accommodations with other persons and companies, but simply that they have refused to give him such facilities as he requires, for his special business as a carrier, over their roads." "His claim must stand upon the right to demand such facilities independently of any enjoyment of like facilities by others." "As an absolute right this cannot be maintained."

*A. A. Strout,* for defendant.

The intention of § 134, c. 51, R. S. is to prevent discrimination on the part of railroads in favor of one express company and against another engaged in express business in this state, in all cases where the railroad furnishes accommodations to common carriers other than itself.

Counsel cited *Express Cases* and *Sargent* v. *B. & L. R., supra.*

PETERS, C. J.   This bill was brought to require the defendants to transport over the railroads controlled and operated by them, between the points of Portland and Lewiston, the freight business of the plaintiffs, upon equal terms and conditions with those granted other express companies.   The statute requires that railroads shall extend equal facilities and accommodations to all persons or companies.   R. S., c. 51, § 134.   The court has acted upon this statute, sustaining the right which the plaintiffs contend for. *N. E. Express Co.* v. *Maine Central R. R. Co.,* 57 Maine, 188. The same doctrine is strongly defended in *McDuffee* v. *Railroad,* 52 N. H. 430; and in many cases.

Difficult questions might arise in some instances as to what should be considered strictly express business.   But no question of the kind occurs here, because the defendants maintain the right to. refuse taking any and all express business, excepting as it shall be controlled and managed by themselves.   There can be no doubt, however, that there is a marked line between the general business of express companies and that of railroad companies. The express company is a wheel within a wheel, doing a business of details, much of the responsibility of which consists in work both preliminary and subsequent to the railroad transportation. It is well known that where railroad companies have undertaken to assume exclusively to themselves that class of business over

their roads, they have managed it under an administration independent of their general affairs. We indulge in these observations, which will have an application upon a question of fact in the case that will presently appear.

It is objected by the defendants that the plaintiffs are a foreign and not a domestic corporation. That fact does not disentitle them to maintain this complaint. The statute protects "all persons engaged" in the business within the state. We permit the commercial world to do business within our borders.

The defendants set up in defense of their right to ignore the claims of the complainants, that they had taken the express business, on their route within the points named, exclusively into their own hands, and that they are under no obligation to extend privileges or accommodations to express companies who are competitors of themselves, and that the statute provision was to protect express companies as between themselves, and not as between them and railroad companies.

In this alleged defense, are two questions. First, whether the allegation of fact is sustained. Secondly, what result will follow if the facts are proved. Both questions have been argued by the counsel for the parties.

The second question we do not propose on this occasion to consider, as we are satisfied that the facts alleged by the defendants, are not proved. The burden of excuse or explanation is on them. They must show why it is that the complainants' demands are not complied with.

Their evidence on this point fails. It breathes the spirit of evasion and pretext. It may be formally and superficially true, but is really untrue. The outside gauze does not cover the inside meaning. It is not pretended that the defendants were doing any express business on their own account when they first refused to carry the express freight of the complainants. The answer was that it would be inconvenient to them to accommodate two express companies. The Merchants Express Company was then doing its business over their road. But by the increasing importunity of the complainants for an equal recognition with the other express company, the defendants were led to resort to the excuse

that they would take the business into their own hands, and they asserted that, as a temporary arrangement until they could equip themselves for the work, they had employed the Merchants Express Company to do the business for them.

It seems on its face a singular mode of business, to claim to do an express business themselves, and hire an express company to do it for them. Such real or pretended arrangements would easily avoid the law which was designed to prevent unequal privileges and accommodations. The evidence discloses that the idea was more in intention than in fact. One of the managers of the railroad company states that on April 30, 1885, the company had assumed the business. On May 11, 1885, its counsel wrote the complainants that the company would do so. The pretension is that there was a contract in writing that the Merchants Express Company were to act as their agents during their (railroad company's) pleasure, which, of course might not continue longer than the complainants' importunity lasted.

The affidavit of Haines of the Merchants Express Company seems to consist mostly of an argument against the injustice of another company competing for the business with them, when there was not business enough even for one company, and he asserts that a temporary contract had been made by which they were to act as agents of the railroad company. But no contract is produced in evidence, and all its terms are not stated. Its production might disclose whether the Express Company were or not to take all the earnings for doing all the work, and whether it be a real or merely a nominal and deceptive bargain.

The rebutting affidavits go to show that no perceptible change has been effected; that all the routine business appears to be the same now as ever before; that the Merchants Express Company retains its offices, its signs, its books, its mode of receiving and delivering goods, and giving receipts therefor; and that the Canadian Express Company also runs over nearly all of the same route.

The complaint in this case was heard in May 1885, and it would not be denied by the defendants that no change has been discernible from that time till the present, a lapse of nearly four years.

The injunction should be made perpetual to this extent: that it shall stand unless, upon a motion to dissolve, it appear, that a new state of facts exists which would make it reasonable to qualify or dissolve the same. The complainants are entitled to costs.

*Decree accordingly.*

WALTON, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.