TRINITY & B. V. RY. CO. et al. v. EMPIRE EXPRESS CO. (No. 7119.)†

(Court of Civil Appeals of Texas. Dallas. Dec. 12, 1914. Rehearing Denied Feb. 6, 1915.)

1. CARRIERS ⊙⇒2—CONSTITUTIONAL LAW ⊙⇒ 297—REGULATION—GRANTING FACILITIES TO EXPRESS COMPANIES—"PUBLIC HIGHWAY" —"COMMON CARRIER."

Rev. St. 1911, art. 6616, requiring every railroad company operating a railroad within the state to furnish reasonable and equal facilities and accommodations upon reasonable and equal rates to all corporations and persons engaged in the express business for the transportation of themselves, their agents, servants, merchandise, and other property, and for the use of cars, depots, buildings, and grounds, and

---

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

† Writ of error pending in Supreme Court.

for exchanges at points of junction with other roads, does not, as applied to a railroad company organized under the laws of this state, infringe any property rights, right to contract, privilege, or immunity of such company, and its enforcement constitutes due process of law, within Const. U. S. Amend. 14, and Const. Tex. art. 1, § 19, providing that no citizen shall be deprived of life, liberty, property, privileges, or immunities, except by the due course of the law of the land, since the state has the power to prescribe the duties and to regulate the conduct of railroad corporations created under its laws in the transaction of its business with the public, especially in view of Const. Tex. art. 10, § 2, declaring railroads to be "public highways" and railroad companies "common carriers," and providing that the Legislature shall pass laws to regulate railroad freight and passenger tariffs, to correct abuses, and to prevent unjust discrimination, and extortion in passenger and freight rates, and enforce them by adequate penalties, and for the accomplishment of these objects and purposes may provide and establish all requisite means and agencies with such powers as may be deemed adequate and advisable.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 4, 5; Dec. Dig. ☞2; Constitutional Law, Cent. Dig. §§ 832–834; Dec. Dig. ☞297.

For other definitions, see Words and Phrases, First and Second Series, Public Highway; Common Carrier.]

2. CONSTITUTIONAL LAW ☞48—VALIDITY OF STATUTE—PRESUMPTIONS IN FAVOR OF VALIDITY.

A statute will not be declared invalid unless its invalidity is beyond reasonable doubt.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46; Dec. Dig. ☞48.]

3. CONSTITUTIONAL LAW ☞70—INVASION OF LEGISLATIVE POWER—COMPELLING GRANTING OF EQUAL FACILITIES TO EXPRESS COMPANIES.

Under Rev. St. 1911, art. 6616, requiring railroad companies to furnish equal facilities and accommodations to all express companies, and article 6617, providing that any railroad company failing to comply therewith shall be subject to a writ of mandamus to compel compliance, where a railroad company had a contract with an express company under which they were operating, a judgment, commanding the railroad company to furnish to another express company all the facilities for the doing of a transportation business which it was then furnishing to the express company with which it had a contract on terms and conditions which were substantially those of such contract, was not erroneous, since, while the power to fix and regulate rates for the government of railroads rests with the Legislature, except in so far as it has been delegated to the Railroad Commission, the judgment did not prescribe a schedule of rates generally to govern between express companies and railroads, but only determined what was a fair and reasonable basis to govern in the particular case in conformity to the rule provided by the Legislature.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 129–132, 137; Dec. Dig. ☞70.]

4. COMMERCE ☞61—INTERSTATE COMMERCE—STATE REGULATION OF CARRIERS.

The absolute power of the federal government, under Const. U. S. art. 1, § 8, to control and regulate interstate commerce, is not interfered with, nor is a burden placed upon interstate commerce, by requiring a railroad company organized under the laws of this state to grant to an express company, also organized under such laws, the same facilities and accommodations on the same terms and conditions as are afforded another express company pursuant to Rev. St. 1911, art. 6616, as the state has power to fix such rates as are applicable through its territory, and common carriers owing their allegiance to the state are subject to such regulations and rates for intrastate traffic as may be provided by state law.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 81–84, 89; Dec. Dig. ☞61.]

5. MANDAMUS ☞174—QUESTIONS FOR JURY—QUESTIONS OF LAW.

Where, in an action for a writ of mandamus to compel a railroad company to grant to an express company the same facilities and accommodations and on the same terms and conditions as were afforded another express company, exceptions were sustained to all of the defensive matter contained in the answer, there were no facts to be submitted to the jury, and it was not error to refuse to submit the case to a jury.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 386, 387; Dec. Dig. ☞174.]

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by the Empire Express Company against the Trinity & Brazos Valley Railway Company and another. From a judgment for plaintiff, defendants appeal. Affirmed.

N. H. Lassiter, of Ft. Worth, Morrow & Morrow, of Hillsboro, Baker, Botts, Parker & Garwood, H. M. Garwood, Jesse Andrews, and Walter H. Walne, all of Houston, for appellants. J. E. Gilbert, of Dallas, and Collins & Cummings, of Hillsboro, for appellee.

RAINEY, C. J. The statement of the case taken from appellants' brief is as follows:

"This is a suit brought by the Empire Express Company, as plaintiff, against the Trinity & Brazos Valley Railway Company and the American Express Company, as defendants, in the district court of Hill county. The suit was filed on August 16, 1913. In its original petition, on which the suit was tried, the plaintiff, in the trial court, appellee here, alleged that it was a corporation chartered under the laws of the state of Texas as an express company, with its general offices in Dallas county, Tex.; that the defendant railway company was a corporation chartered under the laws of the state of Texas operating a line of railroad through various counties in the state of Texas; that the defendant American Express Company was an unincorporated association composed of various individuals, and engaged in the business of a common carrier of express. It is further alleged in the plaintiff's petition that the American Express Company, under a contract with the railway company which fully sets forth the conditions under which facilities therefor should be furnished by the railway company, and the terms of payment therefor by the American Express Company, was transacting an express business on the lines of the railway company; that some months previous to the filing of plaintiff's petition plaintiff had tendered to the railway company a contract substantially the same as that in force between it and the American Express Company, with the request for its execution by the railway company for the purpose of enabling plaintiff to transact an express business on its line; that subsequently its proposed contract was amended by an offer to pay, in advance, $4,000 per month if it were permitted to transact an ex-

press business on the railway company's lines without competition; and that, if it were permitted to transact an express business on the railway company's lines jointly with some other express company, it would pay $2,000 per month, in advance, the conditions of the proposed contract otherwise to remain the same as that in force between the railway and the American Express Company. The advance payment of $2,000, or $4,000, as the case might be, was not offered as a guaranty of that amount, but, in the letter making the offer, it was stipulated that, if 50 per cent. of the gross earnings amount to more than the cash payment, the difference would be paid by the Empire Express Company, but, if 50 per cent. of the gross earnings amounted to less than the cash payment, the difference would be deducted. It was further alleged that the railway company declined to enter into the proposed contract, or to make any other contract with the plaintiff for the transaction of an express business on its lines. The plaintiff's prayer was for the issuance of 'a writ of mandamus by the court commanding and compelling the railway company to furnish the plaintiff reasonable and equal facilities upon reasonable and equal rates that it has been furnishing to the American Express Company within the state of Texas.' The plaintiff's suit was predicated on articles 6616 and 6617 of the Revised Statutes of 1911, which read as follows:

" 'Art. 6616 (4540). Equal Facilities to be Furnished.—Every railroad company operating a railroad within this state shall furnish reasonable and equal facilities and accommodations, and upon reasonable and equal rates, to all corporations and persons engaged in the express business, for the transportation of themselves, agents, servants, merchandise and other property, and for the use of their cars, depots, buildings and grounds and for exchanges at points of junction with other roads. (Acts 1887, p. 113.)

" 'Art. 6617 (4541). Damages for Failure to Comply, etc.—Any railroad company, which shall fail to comply with the provisions hereof, shall be liable to the aggrieved party, in an action on the case, for damages; and such railway company in addition to liability to said action for damages, shall be subject to a writ of mandamus, to be issued by any court of competent jurisdiction, to compel compliance with the provisions of the preceding article; and the said writ of mandamus shall issue at the instance of any party or corporation aggrieved by a violation hereof, and any violation of said writ shall be punishable as a contempt. (Id. § 2.)' "

Copies of the contract between the American Express Company and the railway company, and the proposed contract between the Empire Express Company and the railway company, and the correspondence which had passed between the Empire Express Company and the railway company, were attached to the plaintiff's petition as exhibits.

In its answer the railway company presented demurrers, which, in substance, pointed out the following as the reasons why the plaintiff was not entitled to the relief sought: (1) The articles of the statute relied on, if construed as authorizing the court to issue a writ of mandamus to compel the railway company to enter into the contract tendered it by the Empire Express Company, were void, because, so construed, they would deprive the railway company of its property without due process of law. (2) That there had been no legislative determination or fixing of reasonable rates for the proposed service, that rate making was beyond the power of a court, and therefore the court was without authority to fix the terms upon which the proposed service should be rendered. (3) That the articles of the statute relied on had been repealed by the passage of the constitutional provisions and statutes in pursuance thereof providing for, and creating, a railroad commission. (4) That to require the railway company to furnish the facilities demanded of it by the Empire Express Company, upon the terms proposed, would amount to a confiscation of the property of the railway company and a taking of its property without due process of law. (5) That the granting of the mandamus, as prayed for by the plaintiff's petition, would amount to an interference with interstate commerce. (6) That the act of 1887, being articles 6616 and 6617, was void as being in conflict with the Constitutions of the United States and the state of Texas. (7) That the statute does not purport to require the railway company to furnish the facilities upon the terms of a contract, but upon reasonable "rates."

In addition to the foregoing demurrers, the answer of the defendant tendered, among others, the following issues of fact: First. Whether or not the plaintiff was solvent and financially able to discharge the obligations which it proposed to assume, to the Trinity & Brazos Valley Railway Company. Second. Whether the compensation offered to be paid by the plaintiff for the service demanded was reasonable, and whether or not the cost of such facilities and service was not so grossly in excess of the compensation offered by plaintiff as to constitute a taking of the railway company's property without due process of law. Third. Whether the plaintiff was prepared to do an interstate business on the railway company's lines, and whether the relief prayed for would constitute an interference with and burden upon the interstate commerce of the defendant. Fourth. Whether the railway company, without irreparable injury and loss to the American Express Company, and without interfering with its public business, could admit the plaintiff to do an express business on its lines in cars already set aside for the service of the American Express Company.

The American Express Company adopted the answer of its codefendant, the railway company.

The plaintiff filed a supplemental petition, containing a general demurrer and numerous special exceptions directed at the sufficiency of practically all of the defensive matter urged in the answer of the railway company, together with further plea on the merits.

The defendant, in a supplemental answer, excepted to the allegations in the supplemental petition, and denied the same.

On the 12th day of September, 1913, the court, after hearing, overruled all of the de-

murrers of the defendants, save one, and sustained all of the demurrers contained in the plaintiff's supplemental petition, and thereafter, on the petition alone, without hearing any evidence, granted the writ of mandamus prayed for by the plaintiff. In the order made by the court, the existing contract between the American Express Company and the railway company is closely followed, and the railway company is thereby directed and commanded, within 20 days from the date of the order, to furnish to the Empire Express Company all of the facilities for the doing of a transportation business which it was then furnishing to the American Express Company, and the terms and conditions on which the service is to be furnished are substantially those set out in the contract referred to.

[1] The first error assigned is:

"The court erred in overruling and not sustaining special exception found in paragraph 111, 2 in the original answer of defendant Trinity & Brazos Valley Railway Company, which is as follows: 'The plaintiff's petition filed herein is fatally defective, because it appears upon the face of the same that the act of the Legislature of the state of Texas, by plaintiff relied upon, to wit, the act approved April 2, 1887, being articles 6616 and 6617 of the Revised Statutes of the State of Texas, 1911, entitled, "An act to compel all railroads operating in the state to furnish reasonable and equal facilities and conditions to all corporations and persons engaged in the express business for the transportation of themselves, agents, merchandise and other property," is unconstitutional and void, for that said act, in so far as the same may be construed as compelling the Trinity & Brazos Valley Railway Company to enter into the contractual relations embodied in the form of contract submitted by the Empire Express Company as attached to and made a part of its petition herein, is violative of section 19 of article 1 of the Constitution of the state of Texas, which provides that no citizen shall be deprived of life, liberty, property, privileges, or immunities, except by due course of the law of the land.'"

The second assignment of error raises the same question as No. 1, with the addition that it is in violation of article 14 of the amendments to the Constitution of the United States.

The third assignment is that the judgment of the court deprives the Trinity & Brazos Valley Railway Company of its liberty to contract and of its property without due process of law, in contravention of section 1 of article 14 of the amendments of the Constitution of the United States.

The constitutionality of articles 6616–6617, Revised Statutes of 1911 (Acts of 1887), are attacked by appellants' exceptions. In ruling on the exceptions the allegations of the petition are taken as true. It is alleged that the defendant Trinity & Brazos Valley Railway Company and the plaintiff, Empire Express Company, were organized under the laws of Texas. Damages were waived, and judgment was asked only for the right to do business on said railroad on equal terms with other express companies.

The state, through its Legislature, has the power to prescribe the duties and regulate the conduct of railroad corporations created under its laws in the transaction of its business with the public. Having this right, we are unable to see wherein the Constitution of this state or the Constitution of the United States has been violated by the passage of article 6616, R. S., by which it prescribed the duty of railroad corporations to furnish equal facilities and accommodations to express companies desiring to do business with them. This is confirmed by article 10, § 2, of the Constitution of Texas, which reads:

"Railroads heretofore constructed, or which may hereafter be constructed, in this state are hereby declared public highways, and railroad companies common carriers. The Legislature shall pass laws to regulate railroad freight and passenger tariffs, to correct abuses, and prevent unjust discrimination and extortion in the rates of freight and passenger tariffs on the different railroads in this state, and enforce the same by adequate penalties; and, to the further accomplishment of these objects and purposes, may provide and establish all requisite means and agencies invested with such powers as may be deemed adequate and advisable."

The said article 6616, R. S., having been passed by Legislature, which was in the bounds of its powers, it is valid. It does not illegally infringe appellants' right to contract, or property, nor any privilege or immunity guaranteed by the Constitution, but is in strict accord with the laws of the land; hence its enforcement is "due process of law."

Article 6616, R. S., was held valid by our Supreme Court in the case of State v. Railway Co., 99 Tex. 516, 91 S. W. 214, 5 L. R. A. (N. S.) 783, 13 Ann. Cas. 1072, where the Anti-Trust Law of Texas was involved. Mr. Justice Williams, speaking for the court, said:

"In 1885 it was decided by the Supreme Court of the United States that 'railroad companies are not required by usage, or by the common law, to transport the traffic of independent express companies over their lines in the manner in which such traffic is usually carried and handled,' and that 'railroad companies are not obliged, either by the common law or by usage, to do more as express carriers than to provide the public at large with reasonable express accommodations; and they need not, in the absence of a statute, furnish to all independent express companies equal facilities for doing an express business upon their passenger trains.' Express Company Cases, 117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791. This may be regarded as the rule of law existing in this state until 1887, when was enacted a statute now forming article 4540 of the Revised Statutes of 1895 (now article 6616, R. S. 1911), which was evidently passed in order to remedy what the Legislature, agreeing with the views expressed by the judges who dissented in the Express Company Cases, regarded as a defect in the existing law. It reads as follows: 'Art. 4540. Every railroad company operating a railroad within this state shall furnish reasonable and equal facilities and accommodations, and upon reasonable and equal rates, to all corporations and persons engaged in the express business, for the transportation of themselves, agents, servants, merchandise and other property, and for the use of their cars, depots, buildings and grounds, and for exchanges at points of junction with other roads.' Un-

questionably this authorized and permitted express companies to pursue their businesses on all the railways controlled by state legislation, with 'equal and reasonable facilities and accommodations, and upon equal and reasonable rates.' Thus the scope of this business, as 'authorized or permitted' by law, is defined, and any combination of the kind denounced by the anti-trust statute, the carrying out of which would limit or narrow such scope, is necessarily one to create or carry out a restriction in the free pursuit of the business. This proposition cannot be made plainer by any amount of elaboration. F. W. & D. C. Ry. Co. v. State [99 Tex. 34], 87 S. W. 336 [70 L. R. A. 950]. * * * But it is said that this interpretation of the statute would render it unconstitutional as impairing the obligation of a valid contract. The answer is that the state may, in the exercise of its police power, prohibit the continuance in the future of those things already in existence which are so injurious to the rights * * * of its citizens generally as to justify such an exercise of the power whether the continuance of the things is provided for by contract or not."

In Express Company Cases, 117 U. S. 1, 6 Sup. Ct. 542, 628, 29 L. Ed. 791, it is held that states have the right to enact such a law as the one under discussion; but, as the state from which the case was appealed had no such law, the relief was denied. The court by a majority opinion said:

"In some of the states, statutes have been passed which, either in express terms or by judicial interpretation, require railroad companies to furnish equal facilities to all express companies (citing Maine and New Hampshire statutes); but these are of comparative recent origin, and thus far seem not to have been generally adopted. * * * In this way three or four important and influential companies were able substantially to control, from 1854, until about the time of bringing these suits, all the railway express business in the United States, except upon the Pacific roads and in certain comparatively limited localities. * * * The exact question, then, is whether these express companies can now demand as a right what they have heretofore had only as by permission. That depends, as is conceded, on whether all railroad companies are now by law charged with the duty of carrying all express companies in the way that express carriers when taken are usually carried, just as they are with the duty of carrying all passengers and freights when offered in the way that passengers and freights are carried. * * * The Constitutions and the laws of the states in which the roads are situated place the companies that own and operate them on the footing of common carriers; but there is nothing which in positive terms requires a railroad company to carry all express companies in the way that under some circumstances they may be able without inconvenience to carry one company."

The court further said the railroad company could not be compelled to do so, "unless a statute or some special circumstance made it necessary or desirable." McDuffee v. Railroad Co., 52 N. H. 430, 13 Am. Rep. 72; Express Co. v. Railway Co., 57 Me. 188, 2 Am. Rep. 31; Sandford v. Railway Co., 24 Pa. 378, 64 Am. Dec. 667; Kidder v. Railway Co., 165 Mass. 398, 43 N. E. 115; Express Co. v. Railway Co., 81 Me. 92, 16 Atl. 370; Coal Co. v. Railway Co., 15 R. I. 303, 4 Atl. 394.

[2] It is settled law that a statute will not be invalid unless its invalidity is beyond reasonable doubt. Ashford v. Goodwin, 103 Tex. 491, 131 S. W. 535, Ann. Cas. 1913A, 699; Railway Co. v. Hannay-Frericks Co., 104 Tex. 603, 142 S. W. 1166.

We therefore hold, in view of the decisions, that article 6616 is not unconstitutional.

[3] The fourth, fifth, and sixth assignments of error raise the question as to the power of the court to fix the rates or prescribe the terms of the contract upon which the railroad is to do business with the express company. We understand that the power to fix and regulate rates for the government of railroads rests with the Legislature, except in so far as it has been delegated to the railroad commission, but we do not understand that the court has in this case undertaken to prescribe a schedule of rates generally to govern between express companies and railroads, but has only determined what was a fair and reasonable basis to govern the parties in this case in conformity to the rule provided by the Legislature in article 6616, R. S. The judgment of the court only prescribes the terms for such services to be rendered by the railroad to the Empire Express Company, as the railroad had contracted to render the American Express Company. The statutes require railroads to furnish equal facilities and accommodations to express companies in order to prevent discrimination and have uniform service. The statute has not fixed the rate, nor prescribed the mode and manner of doing business between railroads and express companies, but has left it to contracts between themselves, with this condition, that railroads must deal with all alike, and render facilities and accommodations; that is, that no discrimination is permitted. This being the object and purpose of the Legislature, and the appellant railroad having a contract with the American Express Company, under which they are operating, it is but right and legal that the railroad should afford the Empire Express Company the same terms and facilities for conducting business on its line.

[4] The seventh, ninth, tenth, eleventh, thirteenth, and fourteenth assignments of error raise practically the same question which is stated tersely in the thirteenth assignment and proposition thereunder, which is as follows:

"The court erred in rendering and entering its judgment herein, for that said judgment constitutes an interference with and burden upon the interstate traffic and commerce of the Trinity & Brazos Valley Railway Company, contrary to that clause of section 8 of article 1 of the Constitution of the United States, which provides that 'Congress shall have power to regulate commerce with foreign nations and among the several states and with the Indian tribes.' The Congress of the United States having assumed full control of the interstate and foreign commerce of appellants, Trinity & Brazos Valley Railway Company and the American Express Company, the judgment of the court, which compels the Trinity & Brazos Valley Railway Company to employ an additional agent

to transact its interstate and foreign express business, fixes the rates and charges which shall be paid said Empire Express Company for such interstate and foreign service and prescribes the conditions upon which such interstate and foreign service shall be performed and the mutual obligations arising under the statutes fixed by the court compel the Trinity & Brazos Valley Railway Company to furnish instrumentalities to the Empire Express Company for such interstate and foreign express and passenger business of the Trinity & Brazos Valley Railway Company as well as the interstate and foreign express business of the American Express Company, and imposes heavy financial burdens upon the interstate and foreign express business, both of the Trinity & Brazos Valley Railway Company and the American Express Company, and constitutes an interference with and a burden upon interstate and foreign commerce forbidden by and in direct conflict with the commerce clause of the Constitution of the United States as contained in section 8 of article 1 of said Constitution."

It is too well settled by the Constitution of the United States, as well as by a long line of decisions, that the federal government has absolute power to control and regulate interstate commerce. We also think it well settled that the state has the power to fix such rates as are applicable through its territory. The appellant railroad and the Empire Express Company are creatures of this state. They are common carriers owing their allegiance to the state, and as such are subject to such regulations and rates as may be provided by state law for intrastate traffic. In the case of Simpson v. Shepard, 230 U. S. 423, 33 Sup. Ct. 750, 57 L. Ed. 1511, 48 L. R. A. (N. S.) 1151, it is said:

"The decisions of this court since the passage of the act to regulate commerce have uniformly recognized that it was competent for the state to fix such rates, applicable throughout its territory. If it be said that, in the contests that have been waged over state laws during the past 25 years, the question of interference with interstate commerce by the establishment of state-wide rates for intrastate traffic has seldom been raised, this fact itself attests the common conception of the scope of state authority. And the decisions recognizing and defining the state power wholly refute the contention that the making of such rates either constitutes a direct burden upon the interstate commerce or is repugnant to the federal statute."

As we understand the law, the judgment in this respect in no wise interferes with the right of the federal government in relation to interstate commerce, but the action of the court is strictly within the purview of the law.

[5] The twelfth assignment of error complains of the action of the court in not submitting the case to the jury. The court having sustained the exceptions to the answer, there were no facts to submit to the jury, and consequently there was no error in so ruling.

Appellants have presented numerous assignments complaining of the court for sustaining exceptions to defendant's answer. The various matters pleaded to defeat plaintiffs' cause of action constituted no legal defense to plaintiffs' right to a recovery, and there was no error in the court in so ruling.

The allegations of plaintiffs' petition show that appellee applied to appellant railroad to do an express business on appellant's road on the same terms as that being done on said road by the American Express Company. This was refused by the railroad company without any excuse being given. Appellee then brought suit under article 6616, R. S., a valid statute, to compel the railroad company to comply therewith. The petitions also set out the contract made between the appellant railroad and the American Express Company, the only express company doing business on said railroad company's line, and asks that plaintiff be granted the same facilities and accommodations accorded to the American Express Company by said contract.

The judgment of the court rendered substantially requires the railroad company to grant to appellee the same facilities and accommodations for transacting business with it as it gives to the American Express Company as per said contract, and this relief, we think, is in accord with the statute.

We find no error in the record, and the judgment is affirmed.