## GERARD et al. v. SMITH et al.
### No. 2678.

Court of Civil Appeals of Texas. El Paso.
June 23, 1932.

Rehearing Denied July 18, 1932.

348

A. H. Mount, Louis Wilson, and J. H. Synnott, all of Dallas, for appellants.

James V. Allred, Atty. Gen., and Jno. B. McCraw, Asst. Atty. Gen., and Wm. McCraw, Dist. Atty., Tom C. Clark, Guy L. Mann, Asst. Dist. Attys., and Alvin M. Owsley, all of Dallas, for appellees.

PELPHREY, C. J.

This is an appeal from a judgment sustaining a general demurrer to appellants' petition, and, upon their declining to amend, rendering judgment dismissing the suit.

The suit was instituted by Burton Barber College, Inc., a Texas corporation, with its principal office at Dallas, Tex., engaged in the business of instructing persons studying and preparing to become barbers, and owning several barber schools in Texas; H. L. Gerard, manager and principal owner of said corporation and barber colleges; W. B. Noles, who had taken instruction in barbering, and is an applicant for a license to practice barbering in Texas; and J. B. Harwell, who has practiced barbering a great part of the time since 1923, but who is denied the right to practice barbering without the payment of a license fee of $10. The defendants are the Texas state board of barber examiners, William McCraw, district attorney of Dallas county, Tex., and James V. Allred, Attorney General of the state of Texas.

Appellants attack the constitutionality of the acts of the Forty-First Legislature of Texas, known as the State Barber Law, and also the method and alleged favoritism of the barber board in the administration thereof.

Appellants prayed that appellees be restrained from instituting or prosecuting any criminal action for failure or refusal to comply with the terms of the Barber Law; that the barber board be restrained from showing partiality between the appellants and those favored by the board; from canceling permits theretofore issued to the said barber colleges, from enforcing the curriculum and text-books of the National Educational Council and International Union and National Barbers' Association; from discriminating between those associated with the national unions and associations and councils, and those not associated; and that the Barber Law be declared unconstitutional and void.

Appellees answered through separate attorneys, but together urged the general demurrer, which was by the court sustained. If the act in question is unconstitutional, then the enforcement of it, whether arbitrarily done or not, should be enjoined. Therefore we shall first consider that phase of the appeal.

The act in question was first enacted by the First Called Session of the 41st Legislature, c. 65, and amended at the Second Called Sess. (chapter 62) and Fifth Called Session (chapter 15), Vernon's Ann. P. C. art. 734a. It provides for the creation of a state board of barber examiners, prescribes the terms upon which such board shall issue certificates, or license or registration to practitioners of barbering; prescribes sanitary rules for the practice of barbering and penalties for violation of its provisions.

Appellants first attack the $10 license fee as being a tax on a mechanical pursuit in violation of article 8, section 1, of the state Constitution.

Among the other provisions of the section referred to, there appears the following: "It

may also tax incomes of both natural persons and corporations, other than municipal, except that persons engaged in mechanical and agricultural pursuits shall never be required to pay an occupation tax."

The two ·questions which arise, therefore, are: Is barbering a mechanical pursuit, and is the license fee by the act imposed such a tax as is prohibited by the Constitution? While the Court of Criminal Appeals in a majority opinion in the case of Jackson v. State, 55 Tex. Cr. R. 557, 117 S. W. 818, held that the act of the Thirtieth Legislature which imposed a license tax on barbers contravened the provision of the Constitution because barbering was a mechanical pursuit, yet the same court in a later opinion in the case of Ex parte Cramer, 62 Tex. Cr. R. 11, 136 S. W. 61, 36 L. R. A. (N. S.) 78, Ann. Cas. 1913C, 588, held that fees imposed by a city to pay the cost of necessary inspection of the installation of electrical appliances inside and outside of buildings in the city were not taxes within the article.

Judge Davidson, who wrote the first opinion, was a member of the court, and concurred.

The San Antonio Court of Civil Appeals in the case of Hanzal v. City of San Antonio, 221 S. W. 237, held valid an ordinance of San Antonio charging barbers a license fee, and held that, in the absence of something in the ordinance to show that it was intended to raise revenue, it would be presumed to contemplate regulation. A writ was refused by the Supreme Court in the case.

The above holdings, we think, are sufficient basis for the conclusion that the license fee here, in view of the fact that the act itself provides that all money collected by the board shall be placed in a special fund and used only for carrying out the purposes of the act, is not a tax within the prohibition of the cited article of the Constitution; and that the provision therefor is not invalid. The fee not being an occupation tax within section 1, of article 8, it will not be governed by section 2, of the article, providing that "all occupation taxes shall be equal and uniform upon the same class of subjects within the limits of the authority levying the tax"; and invalid because being discriminatory as contended by appellants in their proposition under point No. 8.

The act is further assailed as being contrary to the constitutional provisions, in that its enforcement will deprive appellees of property, privileges, liberties, and immunities without due process of law; that it delegates to the board unrestrained power to legislate and suspend the law at will or to act without any restraining rules by the law or other tribunal; that the provision for appeal from the action of the board, being limited to the courts of Travis county, is a denial of the privilege of resorting to the courts; that it

denies to appellees the right to a trial by jury of the issues as to their right to follow their trade; that the act is contradictory, confusing, and misleading, in that it provides that no one may obtain a permit unless he has first been an assistant to a barber, and that no one shall be an assistant barber unless he has attended and graduated from a barber college operated by permission of the board; that it discriminates between graduates of barber schools operated by permission of the board and those who early mastered the trade from experience and graduates from other schools; that it is indefinite, uncertain, and unintelligible in requiring students to be able to read intelligently and write clearly the English language, while it requires one who has been an assistant to a barber in another state to be a graduate from the seventh grade in grammar school; that it delegates to the board both legislative and judicial functions, and does not require that the members thereof shall be competent to perform such functions; that the enforcement of the act. will render practically worthless the business of appellees Gerard and the corporation, which they have spent thousands of dollars to build up; that the act requires applicants for a license to qualify to diagnose and treat diseases which the law prohibits them from doing without being licensed as physicians and surgeons; that the act is not justified as a health measure and not within the police power of the state; that it usurps the power granted by law to the state health board; that its object is to restrict applicants to the calling of barbering; and that it impairs the freedom of appellees to contract with students and assistant barbers.

 Appellants argue that the act is discriminatory in many particulars, but especially because it exempts from its operation those persons owning what are called beauty shops; that this court will take judicial notice, especially in connection with the allegations admitted by the general demurrer, that beauty parlors and barber shops are direct competitors one against the other; that a great part of the barber's business is cutting hair for women; and that, if beauty parlors are allowed to do this same thing and not pay any tax, not attend school, and not go to any of the expense imposed upon the barber by the act, it is a case of vicious discrimination and contrary to our Constitution.

In beginning the discussion of this question, the first thought which naturally occurs is as to the power of the Legislature to enact any legislation governing the practice of barbering.

If it has any such right, it comes within what is termed the police power. There have been many definitions of the term "police power" and many cases before the courts of the country assailing statutes as not being within that power.

Our Supreme Court in the case of Spann v. City of Dallas, 111 Tex. 350, 235 S. W. 513, 515, 19 A. L. R. 1387, had the following to say as to that power and its exercise:

"The police power is a grant of authority from the people to their governmental agents for the protection of the health, the safety, the comfort and the welfare of the public. In its nature it is broad and comprehensive. It is a necessary and salutary power, since without it society would be at the mercy of individual interest and there would exist neither public order nor security. * * * The police power is founded in public necessity, and only public necessity can justify its exercise. The result of its operation is naturally, in most instances, the abridgment of private rights. Private rights are never to be sacrificed to a greater extent than necessary. Therefore, the return for their sacrifice through the exercise of the police power should be the attainment of some public object of sufficient necessity and importance to justly warrant the exertion of the power.

"The public health, the public safety, and the public comfort are properly objects of this high importance; and private rights, under reasonable laws, must yield to their security."

Laws regulating trades, callings, and occupations in the interest of public health are universally upheld by the courts of this country, and, where the validity of such laws is challenged, it is no longer a question of authority to enact them, but rather a question of whether the trade, calling, or occupation is one involving the public health. Hanzal v. City of San Antonio, supra; 12 R. C. L. p. 1283, and authorities cited in footnotes. Therefore we are confronted with the question of whether the regulation of the occupation of barbers is necessary to the public health.

We are of the opinion that there can be no serious question but that there is danger of infection to the public from the carelessness and unskillfulness of barbers and from unsanitary methods of performing the functions of that occupation. The infection may be communicated from the barber himself to the customer or from one customer to another. Therefore the regulation of the occupation is proper for the protection of the health of the public and, consequently, a proper subject for the exercise of the police power. This being true, then the act, if not invalid because of improper classification of the persons subject to its provisions, is not violative of the "contract" clause nor the "due process" clause of the Constitution. 9 Tex. Jur. § 79; City of New Braunfels v. Waldschmidt, 109 Tex. 302, 207 S. W. 303; Trinity & B. V. R. Co. v. Empire Express Co. (Tex. Civ. App.) 173 S. W. 217.

We next approach the question as to the classification made by the act.

Section 4 of article 734a of the Penal Code provides:

"Barber shop, as defined herein, shall mean any place where barbering is practiced in this State, and the practice of barbering is hereby defined to be the following practices for hire or reward when not done in the practice of medicine, surgery, osteopathy, or necessary treatments of healing the body by one authorized by law to do so;

"(a) Shaving or trimming the beard or cutting the hair.

"(b) By giving any of the following treatments by any person engaged in shaving or trimming the beard and/or cutting the hair;

"(1) Giving facial and scalp massages, or applications of oils, creams, lotions, or other preparations, either by hand or electrical appliances;

"(2) Singeing, shampooing, or dyeing the hair or applying hair tonics;

"(3) Applying cosmetic preparations, antiseptics, powders, oils, clays, or lotions to the scalp, face, neck, or that part of the body above the shoulders.

"Provided, however, that nothing contained in this Act shall be construed to include those engaged in beauty culture, or what is commonly known as beauty shops, or hair dressing parlors, or such other places where such persons giving treatments or applications therein do not shave or trim the beard or cut the hair, and provided further that any person in any such places exempt shall obtain a certificate to cut or bob the hair only, if he or she desires to cut or bob the hair in such places, and upon the issuance of such a certificate may do any or all of the things set out above, except shaving or trimming the beard."

It thus appears that the Legislature has put within the provisions of the act all those who shave or trim the beard and cut the hair, the requirements for a certificate to cut or bob the hair only being substantially the same as to those for persons doing both shaving and cutting hair.

The classification of subjects is a legislative function, St. Louis Southwestern R. Co. v. State, 113 Tex. 570, 261 S. W. 996, 33 A. L. R. 367, and a statute will not be held invalid by reason of the classification made, unless it appears that the basis therefor is purely arbitrary, Interstate Forwarding Co. v. Vineyard (Tex. Civ. App.) 3 S.W.(2d) 947, and it will be presumed that the classification adopted is a just and reasonable one, Supreme Lodge U. B. A. v. Johnson, 98 Tex. 1, 81 S. W. 18. If the classification could have seemed reasonable to the Legislature, then our duty is to sustain it, regardless of our own opinions on the matter. Clark v. Finley, 93 Tex. 171, 54 S. W.

343; Bradford v. City of Houston (Tex. Civ. App.) 4 S.W.(2d) 592.

With these rules before us, we must conclude that the Legislature could have reasonably decided that shaving and trimming the beard and cutting the hair involved more danger to the public than the doing of the other things enumerated, and, therefore the limiting of the provisions of the act to those doing those things was within their power, even though the doing of some of the things specified by one engaged in shaving and cutting the hair would be barbering, while the doing thereof by one not so engaged would not be.

Another argument presented by appellants is that the act allows persons who have been barbers two years before it goes into effect to be exempt from all these burdens, taxes, and expenses, as well as those who have been serving as barbers in other states.

Section 16 of article 734a reads: "That any person who has for two years immediately preceding the taking effect of this act been continuously engaged in the practice of barbering at one or more established places of business, shall be granted a certificate of registration as a Registered Barber without examination by making application to the Board on or before the expiration of sixty days after the passage of this act, and by paying the required fee of Ten Dollars ($10.00)." As to applicants from other states, the board may issue, upon the required showing, a permit to practice barbering, until called by the board for examination.

We cannot substitute our judgment for that of the Legislature in respect to the qualifications of those who had been engaged in the practice of barbering before the act went into effect. It was within its province to decide that question, and, in the absence of a showing that their judgment was unreasonably exercised, the courts cannot control their decision. Ex parte Whitley, 144 Cal. 167, 77 P. 879, 1 Ann. Cas. 13; Johnson v. Simonton, 43 Cal. 242; People v. Ratledge, 172 Cal. 401, 156 P. 455.

Under propositions 13 and 14, appellant asserts the unconstitutionality of the act, because it is contradictory, confusing, misleading, and violative of sections 1 and 2, article 14, of the Amendments to Constitution of the United States, and section 3 of article

1 of the Constitution of Texas, in that it discriminates between graduates from the schools approved by the board and those who master the trade from practical experience and the graduates of other schools. Statutes regulating the practice of medicine and dentistry have been universally upheld on the theory that they were within the police power because the health of the public was affected thereby. It appears to us that the practice of barbering, being within the police power for the same reason, would fall within the same rules as the practice of those professions, in so far as the methods adopted to test the qualifications for certificates is concerned. The rule seems to be well established that Legislatures may make such requirements as will qualify persons treating human ailments thoroughly to understand their profession; may prescribe reasonable qualifications not only as to medical education but also as to general education. 48 C. J. § 51, and authorities cited.

Seeing no good reason why the above rule should not apply to the act in question, we have concluded that the objections are not tenable, and the assignments are accordingly overruled. The other contentions advanced by appellants affecting the constitutionality of the act have all been considered and found to be without merit.

The following authorities, we think, are decisive of the questions presented. State v. Briggs, 45 Or. 366, 77 P. 750, 78 P. 361, 2 Ann. Cas. 424; State of Minnesota v. Zeno, 79 Minn. 80, 81 N. W. 748, 48 L. R. A. 88, 79 Am. St. Rep. 422; Moler v. Whisman, 243 Mo. 571, 147 S. W. 985, 40 L. R. A. (N. S.) 629, Ann. Cas. 1913D, 392; Commonwealth v. Ward, 136 Ky. 146, 123 S. W. 673.

We have carefully studied the allegations of the petition as to the arbitrariness of the board's manner of enforcing the law, and find that it alleges no particular fact or facts which would call for injunctive relief. While it is true that it charges members of the board with being interested in another school and in having entered into a conspiracy to drive appellant's school out of business, yet there is no threatened act alleged which transcends the powers conferred on the board by the act.

We have carefully considered the many questions presented, and have concluded that the general demurrer was properly sustained. The judgment of the trial court is affirmed.